(No. 5646.    April 16, 1931.)

WOOD LIVESTOCK COMPANY, a Corporation, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[298 Pac. 371.]

George H. Smith, H. B. Thompson and L. H. Anderson, for Appellant.

Peterson, Baum & Clark, for Respondent.

LEE, C. J.—Plaintiff and respondent, Wood Livestock Company, sued defendant and appellant, Oregon Short Line Railroad Company, for damages alleged to have been suffered through a theft of wool taken from a box-car at Spencer during the night of June 23, 1927, and after the said car had been partially loaded and sealed with the regular automatic seals by appellant's wool checker.

The complaint alleged substantially that on or about June 23, 1927, "the plaintiff requested the defendant to spot a freight car in the defendant's yard at Spencer, Idaho, for the purpose of loading a carload of wool and that the plaintiff and an agent of the defendant thereupon commenced loading the same for shipment, but, before said car was completely loaded and after several bags of wool had been placed therein under the direction of defendant's agent and upon the approach of nightfall, 'the defendant refused to permit the said car to be completely loaded, and thereupon sealed said partially loaded car with a small and fragile seal of tin or lead' and then ordered that plaintiff 'finish the loading of said car on the morrow'; that, after said car was partially loaded and after the said wool had been accepted and received by said defendant and during the ensuing night after the sealing of said car, the said car was left in a remote part of the yards at Spencer, some distance from the depot and 'that during said night the defendant carelessly and negligently failed to provide any watchman or agent, or to take any steps whatever to watch or take care of, or prevent the theft of said wool, and said defendant, during said time, negligently and carelessly failed to lock said car' and, as a result of said carelessness, 'thieves entered said car and stole therefrom 1,404 pounds of wool' belonging to plaintiff, and that thereafter forty-six pounds were recovered. Plaintiff prayed judgment in the sum of $481.96."

Appellant admitted the car order, the spotting thereof, and the commencement of the loading. It further admitted "that before said car was completely loaded and after about thirty-three bags of wool had been loaded therein and upon

the approach of nightfall the plaintiff suspended the loading of said car until the following morning and that during the ensuing night, after the doors of said car had been sealed and before loading was resumed on the next day, thieves broke into and entered said car and stole approximately 1,104 pounds of wool, of which 46 pounds was recovered by the plaintiff.''

At the close of plaintiff's evidence, defendant moved for a nonsuit, which motion having been denied, defendant submitted its evidence and, after the parties had rested moved for a directed verdict. This motion was likewise denied; and, a verdict having resulted in plaintiff's favor, defendant appealed from the judgment entered thereon.

Of the several errors assigned, appellant argues one only, the denial of its motion for a directed verdict. The correctness of the court's ruling is admittedly based upon the determination of two propositions: was there a valid delivery to and an acceptance by the defendant so as to constitute a bailment; and, if there was a bailment, then, under the facts and the law, did the defendant exercise due care? It is insisted that the uncontradicted evidence wholly failed to establish either the fact of bailment or the failure to exercise due care. Such evidence as marshaled by appellant disclosed that its checker, George Brimm, was restricted to the duty of checking the wool: he had no authority to issue a bill of lading and did issue none. He placed seals on the car, as he testified, for the sole purpose of protecting the check made by him so that he ''would be sure that all the wool that was put in there would be there in the morning when we started to work again.'' Two or three days after loading had commenced, respondent's secretary and treasurer, Hardy, had a conversation with George Balka, the station agent, wherein the latter testified: ''He asked me if I would put the seals on. I told him, yes, we would put them on for the protection of the check. He says, all right.''

The seals later applied by Brimm were the regular standard seals used on all cars, and the same kind as used by

other railroads, whether in the process of loading or in transit. Such method had long been the usual custom and was at the time known to respondent's agent. The station agent stated that in his twenty-one years of experience no theft had ever occurred from a car under his jurisdiction. J. O. Johnson, who for fourteen years had been the station agent at Spencer testified that no wool had been stolen at that point during his incumbency. In the opinion of these witnesses, the seals employed were a better protection against theft than locks. The men who stole the wool were notorious thieves. At the time of the theft, the station agent had not issued or undertaken to issue any bill of lading.

Upon this evidence, appellant contends that there was no bailment; and, though there had been, "due care was exercised; and this was so clear as to be a question of law; and the court should have granted defendant's motion for directed verdict."

■■ As to the fact of bailment, there was further evidence that the loading was supervised and directed by appellant's checker. Of him, the witness, Hardy, swore: "He told me, the wool loaders and myself, that the wool that was in the car and the car doors and seals would, none of them, be touched except as he was there to do it himself." The checker's admission confirmed this. *Vide:*

"Q. You gave orders, did you, Mr. Brimm, that no one was to take any wool out of that car, and no one was to put any wool in that car unless you, yourself were there? A. Well, yes.

"Q. And that is the reason you put the seal on the car, you say, in order that no wool should go in, and none could come out, unless you knew it. That is true, isn't it? A. Yes."

That these instructions were meticulously observed by respondent appears from the testimony of Hardy:

"Q. Now, when Mr. Brimm wasn't there, and the employees were ready to load, what were they doing? A. They did nothing.

"Q. Why did they do nothing? A. Waiting for Mr. Brimm to come and give them orders.

"Q. When he came what did he do? A. He opened the cars, and they would go to work, check the wool and put more wool in."

Applying the test that, to effect a bailment, there must be a delivery and a subsequent exclusion of the bailor's possession, what could be clearer under these facts than that respondent was not only out of possession but directly commanded to stay out? Its right to enter the car depended solely upon the checker's permission given at such time as he might see fit. There had been no such final delivery to appellant under a bill of lading or otherwise as would have constituted it an insurer, but it had exclusive possession of the wool behind seals that respondent, notwithstanding its ownership, had no right to break.

On the question of due care, it appeared that Spencer is a small, isolated community of about 200 near the Idaho-Montana line: it has no lights or police protection, and the house nearest to where the car was spotted was four or five hundred feet away. There had been to appellant's knowledge five robberies of its cars between January, 1926, and May, 1927: it knew that shortly before the instant robbery, and in the same month, there had been a wool theft at Dell, a point on its line some forty miles above Spencer and a similar one farther north at Melrose on June 9th prior. That wool thieves were abroad and drawing nearer could not have been an unsensed fact. The only protection awarded respondent was that of a fragile piece of tin that could have been broken with a jack-knife or a twisting stick. Its primary purpose, according to appellant's own testimony, was not to protect the cargo within, but simply to determine whether or not the car door once sealed had been tampered with. The fact that the breaking of car seals is made a criminal offense by state and federal statutes cannot relieve appellant of that degree of care it should have exercised under the known circumstances. The trial court could not have held as a matter of law that the

bailee knowing, as it must have known, the valuable nature of the wool, its isolated location, and its consequent invitation and temptation to active thieves did, in fact, exercise the care that a reasonable and prudent man would have exercised with respect to his own property. That was a question of fact for the jury. We think there was sufficient evidence to support the verdict.

Judgment affirmed; costs to respondent.

Budge, Givens, Varian and McNaughton, JJ., concur.

Petition for rehearing denied.