Willie L. McKENZIE and Sanford McKenzie, Plaintiffs and Respondents,

v.

Bernard HANSON and Gerald Braaten, individually, and d/b/a C & B Body Shop, a partnership, Defendants and Appellants.

CENTRAL NATIONAL INSURANCE COMPANY, a corporation, Plaintiff and Respondent,

v.

Bernard HANSON and Gerald Braaten, individually, and d/b/a C & B Body Shop, a partnership, Defendants and Appellants.

UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Plaintiff and Respondent,

v.

Bernard HANSON and Gerald Braaten, individually, and d/b/a C & B Body Shop, a partnership, Defendants and Appellants.

Nos. 8269–8271.

Supreme Court of North Dakota.

June 3, 1966.

Rehearing Denied July 1, 1966.

Ray H. Walton, Williston, for Willis L. McKenzie and Sanford McKenzie, plaintiffs and respondents.

Bjella, Jestrab, Neff & Pippin, Williston, for Central Nat. Ins. Co., a corporation, plaintiff and respondent, and for United States Fidelity & Guaranty Co., plaintiff and respondent.

Michael R. McIntee, Williston, Edwin O. Sjaastad, Bismarck, of counsel, for defendants and appellants.

TEIGEN, Chief Justice.

The three actions above-entitled were consolidated for trial. A jury was waived, and the trial court found for the plaintiffs in each action. Separate judgments were entered, and the defendants have appealed from each, but the appeals were again consolidated for the purposes of briefing and argument in this Court. Trial de novo has been demanded in each appeal.

These actions stem from one fire which consumed the defendants' body shop in which there were located three motor vehicles which were also destroyed by the fire. The plaintiffs are owners or subrogees of owners of separate motor vehicles so destroyed.

The actions are predicated on claimed negligence on the part of the defendants as bailees for hire in the safekeeping of the vehicles, and failure to return. The vehicles had been left with the defendants at their place of business known as the C & B Body Shop for repair or other mechanical work.

The fire occurred at about 10:50 A.M., on October 10, 1960, and was of unknown origin.

The C & B Body Shop occupied a frame building about 60 x 130 feet in size. There was a second building attached and used for other purposes. It also was destroyed.

The body shop had a large drive-in door in about the middle of the west wall. The door was open. It led to a driveway flanked on either side with partitions. These partitions formed a wall for an office in the northwest corner and a storage room in the southwest corner of the building. A paint stall, enclosed with a curtain on one side, was located in the southeast corner. The northeast corner was storage and work area. The section between the paint stall and the storage and work area was also used as a work area, and it was in this part of the building that the fire was first discovered.

A sump, approximately 4 x 6 feet, and 10 feet deep, covered with a metal grill, was sunk into the floor approximately eight to ten feet from the east wall, directly east of the large door and driveway. There were a work bench, tool boxes, tools, and two welding tanks located along the east wall, east of the sump. One of the vehicles destroyed, hereafter referred to as the Ford, was parked facing west with its rear end over the west part of the sump. One of the defendants' employees had welded the right front fender on the Ford on the morning of October 10, about an hour before the fire. The welding torch was connected by two long rubber hoses to the two tanks standing along the east wall. Another employee had flushed the concrete floor with water to clean it, and the third employee had finished masking a truck parked in the paint stall so it could be painted. The defendant Braaten was doing some cleaning around the shop.

The only persons that had been in the body shop on the morning of the fire were the defendant Braaten and defendants' three employees. The shop had been open from about 8 A.M., and the defendant Braaten and the three employees had worked at their various tasks before leaving the building. Two of the employees smoked cigarettes, but there is no evidence they had smoked that morning.

When the fire started, the employee who had done the welding was delivering a vehicle to its owner. A second employee was raking weeds outside the building near the west door, and the defendant Braaten and the third employee were cleaning up the grounds about 30 or 40 feet distant from the west door of the building. The employee who was raking the weeds walked to the west door of the body shop for the purpose of getting some additional tools to load the rakings, and as he stepped to the west door, he discovered the fire. He described what he saw as, "The flames were going all the way up behind the '56 Ford and going up the wall and above the automobile." He could see the Ford, but testified he did not believe the Ford or the sump was burning. He called to the defendant Braaten, who ran the 30 or 40 feet to the door. He described what he saw as, "The whole back section of the shop was in flames" up to the ceiling. The heat from the fire was so intense it prevented anyone from entering the building.

The defendant Braaten testified that the fire was in the area occupied by the work bench, welding tanks and tool boxes, located in the center of the east wall, directly behind the Ford. The evidence established that the work bench, tool box and tools, and the welding tanks were all made of metal. The area where the fire was first discovered was about ten feet from the paint stall.

Two fire departments responded to a call, but were unable to save the building or any of its contents.

The trial court, in very specific and complete findings, found there was no direct evidence of negligence, but concluded that there was a greater probability that the

fire was caused by the negligence of the defendants than from a cause for which the defendants were not responsible. It so found after the defendants had introduced extensive testimony as to its housekeeping practices and the condition of its premises.

There is some conflict in the testimony, however. The defendants and one of their employees testified that in their opinion the C & B Body Shop was average as to cleanliness. The Fire Chief of the City of Williston testified that in his opinion, as he viewed the shop in May, and later in October of 1960, it was very poor as to orderliness and cleanliness, and constituted a fire hazard. The defendant Braaten testified that a body shop is probably the most hazardous of any automobile repair business from the standpoint of fire.

Considerable evidence was introduced by both sides.

It was stated at the opening of the trial that the theory of the respective claims was that the motor vehicles had been left with the defendants as a bailee for hire for certain repairs, and that there was a failure to return them. The evidence established that they were destroyed by fire while in the defendants' possession. The defendants introduced evidence to show good housekeeping practices and the condition of its premises. They introduced evidence to show that all rags were kept in metal containers and were regularly picked up by a local laundry service for cleaning; that refuse and other combustible materials were kept in a metal trash container on the outside of the building; that a number of fire extinguishers were kept throughout the shop; that paint thinners were kept in closed containers and stored in a steel locker; that gasoline was kept in closed containers; that there were no fires in the furnace nor in the water heater located in the shop on the day of the fire; that gasoline was not used for cleaning vehicles prior to painting inside the building; that a commercial solvent was used which was more fire-resistant than gasoline; that the acetylene welder had been repaired a short time before the fire, and that fire-resistant plasterboard had been installed on the walls in the paint stall and a curtain installed at the open end thereof to keep spray from floating into the other parts of the body shop; that a three-foot exhaust fan had been installed in the paint stall; that different parts of the building had been electrically wired from time to time by licensed electricians; that the floor of the shop was made of concrete, and that it was flushed with water regularly; that the floor had been flushed with water on the morning of the fire; that the sump had a 12-inch pipe that extended upward in the sump to about one foot from the top; that the pipe was perforated from the top down for a distance of about two feet, and that therefore the oils and greases flushed into the sump, being lighter than water, would float on top and drain into the pipe first. Defendants also introduced evidence to show that many of these improvements and practices had been instituted or completed at the suggestion of the Safety Division of the State Workmen's Compensation Bureau; that the State Fire Marshal had conducted an investigation after the fire, and that he had caused some of the defendants' witnesses to take a lie detector test, but had been unable to determine the cause of the fire. However, the defendant Braaten testified that in his opinion the housekeeping practices at the C & B Body Shop were about the same as in all garages, and this was corroborated by the defendant Hanson, who testified that, "As far as cleanliness goes, I'd say it was average."

We have fully searched the record, and concur with the trial court that there is no direct evidence of negligence establishing causation. It is clear, however, that the proximate cause of the plaintiffs' losses is established by direct evidence as a fire which had its origin within the defendants' body shop. The defendants ad-

mit that plaintiffs' vehicles were not the cause of the fire.

The evidence also established that the fire on October 10, was the third fire experienced within a year. The other two fires, one in the sump and the other in the metal garbage container located outside the building, were controlled, and no damage resulted. It does not appear, however, that the fire on October 10, had any relationship as to causation or otherwise to the two earlier fires.

■ Where a motor vehicle is left at a body shop for repair, the relationship between the owner of the vehicle and the operator of the body shop is that of bailor-bailee. A bailment for hire is created. Reservation Motor Corporation v. Mayer, 77 N.D. 431, 43 N.W.2d 537.

■ The bailee occupies the position of an independent contractor in repairing the vehicles. The obligation is on the bailee to exercise at least ordinary care in the preservation of the bailor's property while it is being repaired. Section 60–01–11, N.D. C.C.; Reservation Motor Corporation v. Mayer, supra; Gunderson v. Johnson, N.D., 132 N.W.2d 700.

■ The ordinary care required of a bailee on a bailment for hire is such care as would be exercised by a reasonably prudent person under the same circumstances. In other words, the test of ordinary care as applied to the operator of a body shop is such care as a reasonably prudent operator of a body shop would have used in conducting the business of a body shop under similar circumstances.

It is negligence to fail to exercise ordinary care as defined above.

■ In an action based on negligence, the plaintiff has the burden of proving that the defendant was responsible for some negligent act or omission, and that such act or omission was the proximate cause of the defendant's injury. Farmers Home Mutual Insurance Company v. Grand Forks Implement Company, 79 N.D. 177, 55 N.W.2d 315.

■ The plaintiff has the burden of proof throughout the case. The plaintiff must prove by a fair preponderance of the evidence, to the satisfaction of the trier of the facts, the material allegations of its claim. The burden of proof does not shift. When the plaintiff has, by evidence, established a prima facie case, the burden of going forward with the evidence, often referred to as the burden of evidence, shifts to the defendant. If the defendant can impair the prima facie quality of the case against him, the burden of evidence returns to the party having the burden of proof. This process continues until the stock of relevant facts is exhausted. Guild v. More, 32 N.D. 432, 155 N.W. 44; Midland Oil and Royalty Company v. Schuler, N.D., 126 N.W.2d 149.

■ According to 8 Am.Jur.2d, Bailments, Section 315, p. 1202, the weight of authority supports the rule that no presumption or inference of negligence on the part of a bailee arises, as a matter of law, from the mere fact that the property, while in his possession, was destroyed by fire. According to 8 C.J.S. Bailments § 50 (2), p. 518, some of the older decisions held that the loss or injury raised no presumption of negligence on the theory that, the bailee not being considered an insurer of the goods, the law which never presumed any man negligent would rather attribute the loss to excusable causes, and that it was not enough for the plaintiff to prove the loss or injury, but that he must go further and must show that the same had occurred by defendant's negligence. However, in both of these encyclopedic works, it is stated that under the modern rule, loss or injury of bailed property while in the hands of the bailee ordinarily raises a presumption of negligence or other fault casting on the bailee the burden of going forward with the evidence and of showing that he did exercise that degree of care which is required by the nature of the bailment. 8 Am.Jur.

2d, Bailments, Sections 316 and 317; 8 C.J.S. Bailments § 50 (2), p. 518. See also 16 A.L.R.2d p. 799, and A.L.R.2d, Later Case Service, Vol. 2.

We find many courts have held that where the bailee fails to return the property on demand, a presumption arises that the loss was due to his negligence. On such showing by the bailor, the bailee has the burden of going forward with the evidence and of showing that he did exercise that degree of care required by the nature of the bailment. Chaloupka v. Cyr, 63 Wash.2d 463, 387 P.2d 740; Wyatt v. Baughman, 121 Utah 98, 239 P.2d 193; Redfoot v. J. T. Jenkins Company, 138 Cal. App.2d 108, 291 P.2d 134. This is a case of first impression in this State, and we adopt the modern rule that where a bailment for hire is proved and the defendant bailee failed or refused to redeliver, there is a presumption of negligence on the part of the bailee, and the burden of going forward with the evidence shifts to the bailee. The bailee is then required to show that the property bailed was lost or destroyed, and the manner in which it was lost. If such proof by the bailee does not disclose a lack of ordinary care, then such evidence shows that the bailee had exercised ordinary care under the circumstances, and the question of negligence on the part of the bailee becomes a vital issue in the action.

If the bailee can impair the prima facie quality of the bailor's case against him, the burden of evidence returns to the bailor, he having the burden of proof. This process continues until the stock of relevant facts is exhausted. Thus the ultimate burden of showing that the bailee was negligent does not shift, but is always upon the bailor. The bailor is merely aided by a presumption of negligence on the part of the bailee when he proved the delivery of the bailed property and the failure on the part of the bailee to redeliver it.

Thus in this case, when the plaintiffs had proved delivery of their vehicles to the defendants for repair, and further proved the defendants' failure to redeliver on proper demand, the bailor had established a prima facie case. The presumption of negligence on the part of the defendant bailee then arose from such showing, and the burden of going forward with the evidence shifted to the defendants. If the evidence produced by the defendants in sustaining this burden of going forward with the evidence shows due care on their part, the presumption of negligence is overcome. But an inference of negligence continues, to be weighed by the trier of the facts, against the defendant bailees' evidence of non-negligence. This way the plaintiff-bailors have received such advantage from the presumption of negligence as to place them on a par with the plaintiffs in an ordinary tort action, but without requiring the defendant-bailees to resume the burden of specifically explaining the cause of the loss or damage.

Therefore, the prima facie case of the plaintiffs, made by showing the bailment, and the failure on the part of the defendants to return the property, required the defendant-bailees to show that such failure to return was due to the destruction of the vehicles by fire, and further to show that they had exercised ordinary care in the premises. Having introduced such evidence, the presumption of negligence disappears, but an inference of negligence remains.

The question to be determined by the trier of the facts, then, is whether the defendants were in fact negligent. In determining the fact of negligence, the trier of facts can consider the inference of negligence raised by the fact that the vehicles had been destroyed by fire while in the defendants' possession. If, in considering all of the evidence, including the inference of negligence, the trier of fact is not persuaded that the negligence of the defendants did in fact cause such loss, the decision must be for the defendants because the plaintiffs have failed to sustain the burden

of proving negligence of the defendants on the whole case.

■ Where the action is tried to the court and a trial de novo is demanded on appeal to this Court, we would review and weigh the evidence and find the facts independent of the trial court's findings. Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808; Strobel v. Strobel, N.D., 102 N.W.2d 4; Spielman v. Weber, N.D., 118 N.W.2d 727. In reviewing and weighing the evidence, independent of the trial court's findings, such findings of the trial court will be given appreciable weight, but they are not binding upon this Court.

As stated earlier, the trial court in this case found that there was no direct evidence of negligence on the part of the defendants, but in weighing the inference of negligence against the evidence introduced of ordinary care, concluded that there was a greater probability that the fire was caused by the negligence of the defendants than from a cause for which the defendants were not responsible.

■ The defendants introduced evidence of their housekeeping practices as a defense to the inference that the fire was caused by their negligence. We find the evidence introduced by the defendants was sufficient to overcome the presumption of negligence that arose when the plaintiffs established their prima facie case. However, the inference of negligence remains. Thus the question for us to determine is whether the plaintiffs have sustained the burden of proof in this case. In our opinion, they have. The evidence is that the fire started at or on the east wall of the shop in about the center thereof. The evidence introduced by the defendants relative to the paint stall, the sump, the closed gasoline cans, the closed rag cans, the trash container, the fire extinguishers in the building, the fact that parts of the building had been wired by electricians, the concrete floor, and that the floor was regularly flushed with water, are in no way directly connected with the east wall at or about the center of the building where the fire was first seen. The evidence establishes that in the area where the fire was first discovered, and where we must conclude it started, were located a metal work bench; tools, some electric, which were hung on the wall; tool boxes, and two tanks for acetylene welding. It is also established that the fire did not start on the outside of the building. Thus most of the evidence of the defendants as to their housekeeping practices does not apply to the area where the fire started, and may be considered only to show the general practice of the defendants in the management of their shop. Both defendants testified, however, that the shop was only average from the standpoint of cleanliness. Contrary to this opinion was that testified to by the Fire Chief of Williston that the shop was a fire hazard because of poor housekeeping practices.

■ Considering all of the evidence, taking into consideration the trial court's findings, and the inference of negligence as to the cause of the fire, we as the trier of the facts find that the more convincing evidence establishes that the fire which destroyed the plaintiffs' vehicles was caused by the negligence of the defendants. On cross-examination, the defendant Braaten testified that fires in such a business may or may not occur, depending upon the care that is taken, and we believe that it is a matter of common knowledge that fires in body shops do not ordinarily occur except through negligence of some person. The only persons who had been in the body shop on the day of the fire were the defendant Braaten and three of defendants' employees. For these reasons, we find the plaintiffs have sustained the burden of proof.

The judgment is affirmed in each of the above-entitled cases.

ERICKSTAD and KNUDSON, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

STRUTZ, Judge (dissenting).

I dissent. The plaintiffs' complaint alleges that they left their automobile at the defendants' place of business; that it was destroyed by fire, and that such fire was caused by the negligence of the defendants in that they allowed welding to be done on the premises in the presence of inflammable and explosive fuel and fumes, causing the building to be burned and the automobile of the plaintiffs to be totally destroyed.

Not one of these allegations of negligence on the part of the defendants was proved by the plaintiffs. In fact, after all of the evidence had been submitted, the trial court could find no evidence of negligence on the part of the defendants. One of the court's findings states:

"That the Court finds no direct evidence of negligence on the part of the Defendants or any employees."

In spite of the total failure of the plaintiffs to produce any evidence of negligence on the part of the defendants, however, the court goes on to find:

"The Court's view of the evidence is that there is a greater probability that the fire was caused by the negligence of the Defendants than from a cause for which the Defendants were not responsible."

It was on this later finding that the court based its judgment for the plaintiffs.

If there ever was a decision of this court that completely ignores all precedent on the subject of negligence and burden of proof, a decision that is based entirely upon surmise and conjecture, the majority decision in this case is such a decision. This court repeatedly has held that, in an action based on negligence, the plaintiff has the burden of proving that the defendant was respon-sible for some negligent act or omission, and that such act or omission was the proximate cause of the injury of which the plaintiff complains. Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315; 38 Am.Jur., "Negligence," Sec. 285, p. 975; 65 C.J.S. Negligence §§ 208, 209, pp. 964, 970. The majority decision wholly wipes out any requirement that the burden is upon the plaintiff to establish not only the defendant's negligence, but that the defendant's negligence was the proximate cause of the plaintiff's injury.

The majority attempt to avoid basing their decision on a finding that there is a greater probability that the fire was caused by the negligence of the defendants than from a cause for which defendants were not responsible, and they do so by the simple device of playing on words. They come to the same conclusion as the trial court and reach the same result, but they carefully avoid using the trial court's words in doing so. They concede that the plaintiffs have the burden of proof—which in this case they have wholly failed to sustain—but they avoid reaching the logical result of the plaintiffs' failure to sustain their burden of proof merely by saying, " * * * we find the plaintiffs have sustained the burden of proof." There is absolutely no evidence in the record on which to base such a finding. The only evidence of negligence on the part of the defendants, other than an inference of negligence arising from the fact that the defendants were in actual possession of the shop, is found in the fact, as the majority point out, that one of the defendants testified on cross-examination that fires in such a business as a body shop may or may not occur depending on the care that is exercised. In other words, the majority base their decision on the same reasoning as did the trial court: that, although the cause of the fire cannot be established, there is a greater probability that it was caused by the negligence of the defendants than from some cause for which the defendants were not responsible, al-

though they avoid saying so in express language.

The result of the majority opinion in this case, which is contrary to all previous decisions of not only our court but of the vast majority of courts in other jurisdictions, is to make the operator of a body repair shop an insurer of all automobiles left with him unless he can affirmatively show that the fire resulted from a cause for which he is not responsible. In other words, the majority opinion places upon the operator of a body shop the burden of showing not only that he used due care, but he must show what caused the fire, and that such cause was not due to his negligence. If, as in this case, the cause of the fire is unknown, he is held responsible. This makes the operator of such shop an insurer, and is clearly contrary to the general rule adopted by the majority of the courts in this country. 8 C.J.S. Bailments § 27 a (1), p. 401, at 406.

The trial court was frank and honest in the appraisal of the evidence, and found that there was no evidence of negligence. However, he did order judgment for the plaintiffs on the theory that:

"* * * there is a greater probability that the fire was caused by the negligence of the Defendants than from a cause for which the Defendants were not responsible."

The majority also find for the plaintiffs, but they pretend to find evidence of negligence which the trial court did not find, and which a careful reading of the evidence does not disclose. The trial court, who had the witnesses before him and heard their testimony and saw their demeanor on the stand, was compelled to find that there was no evidence of negligence.

When the plaintiffs introduced evidence of the delivery of their automobile to the defendants for repair, and further showed the failure of the defendants to redeliver on demand, they placed upon the defendants the burden of going forward with the evidence. That burden required them to show

ordinary care on their part in the operation of the shop and in the safekeeping of plaintiffs' automobile. A careful reading of the evidence will show that the defendants fully sustained that burden. Ordinary care on the part of a repair shop, under the circumstances in this case, required the defendants to show, not that they had used the utmost care that could be exercised under the circumstances, but that they had exercised such care as a reasonably prudent operator of a body shop would use in conducting the business of a repair shop under similar circumstances. The defendants have fully sustained this burden. In going forward with the evidence, they showed that all of the rags used in their business were kept in covered metal containers and picked up once a week by a laundry service; that refuse and other combustible materials were kept in a trash container outside of the shop; that a number of fire extinguishers were kept in various locations throughout the shop; that paint thinners were kept in closed containers and stored in a steel locker; that there was no fire in the shop on the day of the fire and that the gas water heater had not been used on that day; that the shop did not use gasoline for cleaning vehicles prior to painting because it was considered too flammable and that it was not as satisfactory as commercial solvents which were fire resistant; that the acetylene welder had been repaired but a short time prior to the day of the fire; that fire-resistant walls had been installed in the paint room; that a part of the building had been rewired and that the wires in such portion of the building were placed in a steel conduit; that floors in the work areas of the paint and body shop were made of concrete; that the shop was cleaned at the beginning of each work day and then washed down with a hose, and that this procedure had been followed on the morning of the fire; and that, in fact, all safety measures which had been recommended to them by the safety division of the North Dakota Workmen's Compensation Bureau had been fully complied with by the defendants.

The majority opinion cites the proper rules and then fails to apply them. The decision overturns all previous decisions not only in this State but the decisions in a large majority of the jurisdictions on the subject of negligence and proximate cause. It is, in my opinion, a decision which cannot be sustained on the record before us.

I would reverse the judgment of the district court and order judgment for the defendants.