**Pearlie LEE, Plaintiff and Respondent,**

**v.**

**Oscar JOHNSON, Defendant and Appellant.**

**Civ. No. 8437.**

Supreme Court of North Dakota.

Nov. 24, 1967.

 

Thomas & Berning, Minot, for appellant.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for respondent.

PAULSON, Judge (on reassignment).

The plaintiff, Pearlie Lee, commenced an action for damages incurred by his horse and to his tandem trailer while the two were in the possession of the defendant, Oscar Johnson. The case was tried to the court and plaintiff recovered judgment in the sum of $525, plus costs, for injuries which diminished the value of his animal.

The defendant has appealed and demanded a trial anew in this court.

The record disclosed that Lee was a farmer-rancher and the owner of a commercially manufactured tandem horse trailer, in above-average condition, which was used by Lee and his wife and children in regularly transporting horses which were for sale or to be used in rodeos and horse shows. Johnson, a neighboring farmer-rancher, who was experienced in the operation of pickup trucks and in the towing of trailers, attempted to secure Lee's trailer to transport Johnson's horse from a ranch near Williston, North Dakota, to Johnson's ranch near Minot, North Dakota. Lee orally agreed to permit Johnson to use the trailer, conditioned upon Johnson's transporting Lee's horse from White Earth, North Dakota, to Lee's ranch near Minot. Johnson, in turn, agreed to these terms and obtained possession of the trailer for the purposes mentioned. Prior to permitting the trip, Lee inquired concerning the travel experience of Johnson's horse, and he was assured by Johnson that his horse was accustomed to riding in a trailer. Johnson also had an opportunity to examine the trailer. Lee did not travel with Johnson on the trip, but Johnson was accompanied by his teen-age daughter, and by his brother, who died prior to the trial. Johnson's pickup truck was used to tow the trailer and Johnson proceeded to a ranch near Williston where he loaded his own horse into the trailer. He later drove to a ranch near White Earth where he stopped and loaded Lee's horse. Johnson then drove to Stanley, North Dakota, where he stopped to check the horses and trailer before leaving for Minot. Several miles east of Stanley, on Highway No. 2, the trailer suddenly swerved, causing the pickup truck to run off the highway, whereby the trailer was severely damaged and the horses were injured. The accident occurred on a dry, paved highway, in the afternoon. Johnson asserted that his vision was unobstructed, that there was no mechanical failure of his vehicle, as well as no intervening cause

other than a possible slight gust of wind, nor was there other vehicular traffic which caused any difficulty. Johnson further asserted that he was traveling at a speed of approximately 40 to 45 miles an hour at the time the trailer suddenly began to swerve, but he offered no other explanation for the cause of the accident.

Lee's testimony emphasizes that the trailer was frequently used by his wife and children; that it had been trailed in safety at speeds varying from 40 to 70 miles an hour; and the trailer was maintained in above-average condition. The testimony of Lee shows that his horse, which he purchased at a figure of $350, was a registered quarter horse, which was thereafter extensively trained by another rancher. It had been purchased especially for the dual purposes of use as a stock horse and in rodeo events. Lee attempted to use the horse in the spring of 1964, approximately a year after the accident, which occurred in April of 1963, but discovered that the horse's withers had been damaged and the horse could not be used either as a rodeo or stock horse. He thereafter sold the horse for the sum of $125. Johnson testified that he did not check the horse for any injury or disability at the time he loaded it in the trailer at the ranch near White Earth. Lee had the horse checked by a veterinarian shortly after the accident but this examination did not reveal any apparent injury to the withers.

This case presents two primary issues: first, has the plaintiff proved by a preponderance of the evidence that the defendant was liable; and, second, has the plaintiff proved his damages?

Since, from the record, we find this to be a bailment for the mutual benefit of bailor and bailee, there is no question but that the appellant had a duty of exercising ordinary care. Sec. 60–01–11, North Dakota Century Code; Gunderson v. Johnson, 132 N.W.2d 700 (N.D.1965). Thus the record disclosed a duty and a prima facie breach of it by Johnson. Johnson contends, however, that he had impaired the prima facie quality of the case against him by introducing evidence as to his exercise of due care, and as to other possible causes for the occurrence, such as a possible sudden gust of wind or the movement of the horses. The appellant relies primarily on McKenzie v. Hanson, 143 N.W.2d 697 (N.D.1966), to sustain this contention.

The *McKenzie* case, supra, was a consolidated action for damages to plaintiffs' automobiles due to a fire in defendants' repair shop where the vehicles were stored. This court found that the legal relationship existing between the parties was a bailment for hire and that the bailee had a duty to exercise reasonable care. The court held that the plaintiffs had the burden of proving that the defendant was responsible for a negligent act or omission, and that this act or omission was the proximate cause of the damage to the cars; that, when the plaintiffs have introduced evidence sufficient to prove a prima facie case, the burden of going forward with the evidence shifts to the defendant; that, if the defendant introduces evidence which shows due care, the "presumption" of negligence which arose from proof of non-delivery of the bailed goods is overcome. It is on this that the appellant relies, but his analysis of the case is incomplete. As this court said in the case of McKenzie v. Hanson, supra, at page 704:

" * * * If the evidence produced by the defendants in sustaining this burden of going forward with the evidence shows due care on their part, the presumption of negligence is overcome. But an inference of negligence continues, to be weighed by the trier of the facts, against the defendant-bailees' evidence of non-negligence. This way the plaintiff-bailors have received such advantage from the presumption of negligence as to place them on a par with the plaintiffs in an ordinary tort action, but without requiring the defendant-bailees to resume the burden of specifically explaining the cause of the loss or damage."

Thus, it is clear in the instant case that a mere attempted showing of due care by the defendant does not cancel the efficacy of the plaintiff's case, and that McKenzie v. Hanson, supra, cannot be relied on to so state.

We believe that to uphold the appellant's view of this case would be to render nugatory the principle set forth in *McKenzie*.

We find that Johnson was in control of the trailer which contained Lee's horse when the accident occurred in which the horse was injured. Johnson was towing the trailer on a dry, clear day and had unobstructed vision; there was no mechanical failure of his vehicle or any other reason which explained the accident. The testimony of Johnson and his daughter was offered to rebut the presumption of negligence and had it rebutted the presumption by showing due care on his part there would remain only an inference of negligence on the part of Johnson. However, in this case we find that the testimony of Johnson and his daughter is so incredible that the defendant has wholly failed to sustain the burden of going forward with the evidence.

Giving the trial court's findings appreciable weight and recognizing that the presumption of negligence has not been rebutted by the defendant, we find that the defendant's negligence was the proximate cause of the plaintiff's damages. For these reasons we conclude that the plaintiff has sustained the burden of proof with reference to defendant's negligence.

The last issue is whether or not Lee proved his damages. Johnson urges that the trial court erroneously applied the res ipsa loquitur rule to determine the damages in this case. Obviously this doctrine does not encompass the matter of damages. Res ipsa loquitur is only employed for the determination of liability. What Johnson is actually attacking is the adequacy of the proof as to the damage to Lee's horse. The findings of the trial court are, on trial de novo, entitled to appreciable weight. Pauly v. Haas, 84 N.W.2d 302 (N.D.1957); Bertsch v. Zahn, 141 N.W.2d 792 (N.D. 1960). Such findings are not, however, to be used in replacement of the performance of this court's statutory duty to try anew questions of fact under Section 28–27–32 of the North Dakota Century Code. Strobel v. Strobel, 102 N.W.2d 4 (N.D.1960). Although the evidence on the question of damages leaves something to be desired, nevertheless we find there was evidence introduced without objection of the value of the horse prior to the accident and immediately after the accident, when the horse's physical condition became known. Giving appreciable weight to the trial court's findings, we affirm the trial court on the issue of damages. The judgment is therefore affirmed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.