**GREAT PLAINS SUPPLY CO.,**
Plaintiff and Appellant,

v.

**MOBIL OIL COMPANY, a division of Socony
Mobil Oil Company, Inc., Defend-
ant and Respondent.**

Civ. No. 8542.

Supreme Court of North Dakota.

Nov. 3, 1969.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for plaintiff and appellant.

Bosard, McCutcheon & Kerian, Minot, for defendant and respondent.

PAULSON, Judge.

This is an appeal by the Great Plains Supply Company from a judgment awarded to Mobil Oil Company and entered in the District Court of Mountrail County, Eugene A. Burdick, J., presiding. Great Plains demands a trial de novo, pursuant to § 28–27–32 of the North Dakota Century Code.

The factual situation giving rise to the controversy is as follows: Mobil planned to erect a new warehouse at Parshall, North Dakota, to provide storage facilities for Mobil's products which were required by its consignee, Gary R. Olson. Mobil solicited bids for the demolition of its old storage building and for the erection of the

new warehouse. Mobil had stored in the old warehouse various quantities of oil and grease which had to be removed and stored elsewhere while the old warehouse was being demolished and the new facility was being constructed. The oil and grease so stored during the construction period were then to be placed in the new warehouse facility for storage. Mobil simultaneously solicited separate proposals for the removal, storage, and redelivery of the oil and grease.

The record indicates that Great Plains was the successful bidder for both projects; and the necessary contracts in the form of work orders were executed, by Vernon D. Johnson on behalf of Great Plains, and by Walter G. Junchen for Mobil. The terms of Work Order No. 121 provided for the furnishing of labor and materials to demolish Mobil's old warehouse and to construct a 24- by 40-foot new warehouse for the contract price of $4,705.00. The terms of Work Order No. 122 provided for incidental work involving the furnishing of labor to remove merchandise and of storage facilities until the new facility was completed, and then for the delivery of the merchandise to the new facility, for the contract price of $290.00. Each work order had the following contract provision set forth on its reverse side:

"7. If the work relates to any article entrusted to Contractor, Contractor assumes all risk of loss of or damage to the article while it is in Contractor's possession or under Contractor's control. In the event of loss or irreparable damage, Contractor shall promptly reimburse Mobil for the value of the article specified on the face of this order. Any other damage shall be promptly repaired by Contractor at Contractor's expense."

The project for the removal, temporary storage, and delivery of merchandise, pursuant to the terms of Work Order No. 122, was subcontracted by Great Plains to Delton Snyder of Parshall for the contract price of $290.00. Snyder leased a warehouse in Parshall and removed the merchandise from Mobil's old warehouse to his leased warehouse. During the time the Mobil merchandise was stored in Snyder's warehouse, there was considerable rainfall in Parshall, including at least one rainfall of very unusual proportions, and the stored merchandise purportedly became saturated, and it deteriorated. Mobil, shortly thereafter, destroyed all of its stored merchandise and refused to pay Great Plains for constructing the new warehouse, Mobil having determined that Great Plains was liable for the alleged damage to Mobil's merchandise.

Counsel for Great Plains, on January 11, 1967, caused a summons and complaint to be served on an agent for Mobil. The complaint alleged that Mobil was liable to Great Plains in the amount of $5,307.00, which amount included $4,705.00 for the new warehouse, $312.00 for extra gravel fill, and $290.00 for the moving, storage, and return of the merchandise.

Mobil answered the complaint, denying the allegations in the complaint and included in its counterclaim the figure of $6,069.20, which was the alleged amount of damage to Mobil's merchandise during storage, and the amounts expended for labor and vehicles necessary to dispose of the merchandise. Mobil prayed for judgment in the sum of $762.20, or the difference between Great Plains' claim and Mobil's counterclaim, together with its costs and disbursements.

Great Plains, on February 10, 1967, interposed a reply to Mobil's counterclaim, and served a first amended reply to counterclaim on July 18, 1967, wherein Great Plains denied Mobil's allegation of negligence and asserted the defense that the negligence of Mobil and its agents contributed to and caused the damage complained of, and that Mobil had knowledge of the location and condition of the temporary warehouse and had full access there-

to and control thereof and therefore Mobil assumed the risk of loss or damage.

The case was tried to the court without a jury and the court found that Mobil's merchandise was damaged in the amount of $5,139.25, as the result of Great Plains' negligence; and that Mobil owed Great Plains $5,017.00 for construction of the warehouse. The court made no finding with regard to the contract price of $290.00 under Work Order No. 122. The court further found that there was a bailment for hire; that the bailed property was damaged while in the care and custody of Great Plains; and that Great Plains did not go forward with the evidence to prove that it exercised the degree of care required in a bailment relationship. The court therefore determined that there was a breach of the bailment contract and that Mobil was entitled to be compensated for the reasonable value of its damaged merchandise. The court then awarded judgment to Mobil in the amount of $122.25, plus costs and disbursements in the amount of $147.60, for a total judgment of $269.85.

Great Plains appeals from this judgment, and the issues involved are as follows:

1. Is Great Plains liable for water damage to Mobil's merchandise, which Great Plains moved to temporary, substitute storage?

2. Are Mobil's answers to interrogatories by Great Plains, during pre-trial discovery, admissible on behalf of Mobil at the trial as evidence of its damages?

In determining whether Great Plains is liable for the alleged damage to Mobil's merchandise, it is necessary to examine carefully the relationship of the parties. The trial court found the relationship to be one of bailment for hire and not one of landlord and tenant. The court further found that the merchandise was damaged while it was in the care, custody, and control of the bailee, Great Plains, and that Great Plains failed to refute the presumption of negligence arising therefrom.

It is difficult to ascertain whether the facts which culminate in a particular transaction constitute a bailment or create some other contractual relationship. In determining whether a relationship is one of bailor and bailee, or landlord and tenant—

"* * * the test is whether the person leaving the property has made such a delivery to the owner of the premises as to amount to a relinquishment, for a time, of his exclusive possession, control, and dominion over the property, so that the latter can exclude, within the limits of the agreement, the possession of all others. If he has, the general rule is that the transaction is a bailment. If there is no such delivery and relinquishment of exclusive possession, and control and dominion over the goods. is dependent in no degree upon the co-operation of the owner of the premises, and access to the goods is in no wise subject to the latter's control, it is generally held that the owner of the goods is a tenant or lessee of the space upon the premises where they are left." 8 Am.Jur.2d, Bailments § 20, p. 926.

Courts have stated that to constitute a bailment, there must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give the bailee the sole custody and control of the goods. Freeman v. Myers Automobile Service Co., 226 N.C. 736, 40 S.E.2d 365 (1946); Wood Livestock Co. v. Oregon Short Line R. Co., 50 Idaho 524, 298 P. 371 (1931); Feay v. Miller, 72 S.D. 185, 31 N.W.2d 328 (1948); Reimers v. Petersen, 237 Iowa 550, 22 N.W.2d 817 (1946). This court, in Lee v. Johnson, 154 N.W.2d 382, 385 (N.D.1967), also considered the element of control.

Vernon D. Johnson, the manager of Great Plains, testified that Great Plains subcontracted to Delton Snyder the job of hauling the merchandise from the old warehouse to a temporary warehouse; of storing the merchandise in the temporary

warehouse; and of transporting the goods from the temporary warehouse to the new warehouse. Johnson further testified that there were two keys to the temporary warehouse and that Gary R. Olson, Mobil's consignee, and Delton Snyder each had possession of one of these keys at all times pertinent to this lawsuit. Johnson also testified that Olson had ordered Albert Erickson, a Parshall drayman, to place other Mobil merchandise in the temporary warehouse.

Olson, Mobil's consignee, testified that he received a key to the temporary warehouse from Snyder, prior to the time when Snyder moved the Mobil products from the old warehouse to the temporary warehouse, and Olson then directed that a boxcar-load of Mobil products be hauled to and stored in the temporary warehouse. Olson also stated that he had caused to be stored in the temporary warehouse Mobil merchandise from three or four other deliveries and that he did not, on any of these occasions, complain of the suitability of the temporary warehouse. Olson further testified that he entered the temporary warehouse quite often to secure products which he was selling in his business, that neither Snyder nor anyone else from Great Plains accompanied him on these occasions, and that he was free to lock and unlock the door to the temporary warehouse as he desired.

Walter R. Junchen, maintenance supervisor for Mobil, testified that he did not personally inspect the various storage facilities available in Parshall. He further stated that he assumed that it would be necessary for Olson to have access to the temporary warehouse at all times and that Olson would continue to be responsible to Mobil for the products consigned to him.

Donald A. Loepp, the Mobil marketing representative, testified that he had never been inside the temporary warehouse.

The record clearly indicates that Olson, Mobil's consignee, had Mobil merchandise stored in the temporary warehouse prior to the time when Snyder moved the Mobil merchandise from the old warehouse to the temporary warehouse. The record further reveals that Olson placed other merchandise in the temporary warehouse, and that he often removed articles of merchandise from this warehouse when he needed them for sale to his customers. There was no inventory control used by Mobil and therefore there was no precise record of what goods were placed in and removed from the temporary warehouse by Olson, nor of what goods were placed in or removed from this warehouse by Snyder. Olson at all times shared custody, control, dominion, and possession of Mobil's merchandise in the temporary warehouse. He could have removed all of the merchandise at any time without consulting Snyder or anyone from Great Plains. Control or possession of the goods was not surrendered by Olson and Mobil at any time while the goods were stored in the temporary warehouse.

■■■ However, in the instant case Great Plains and Mobil executed a contract in writing whereby it was specifically agreed that Great Plains was to:

"Furnish labor & storage facilities to remove merchandise & store until new warehouse is built [and] return merchandise to new warehouse."

Where the bailment is made pursuant to an express contract, the application of the general rules ordinarily is affected thereby, and it must be borne in mind that the measure of the rights, duties, and obligations of either bailor or bailee in a particular transaction can be ascertained exactly only by a reference to the terms of the contract itself. 8 Am.Jur.2d, Bailments § 120, p. 1015. See Gunderson v. Johnson, 132 N.W. 2d 700 (N.D.1965). In the case at bar, where Great Plains and Mobil entered into such a contract for a valuable consideration, the respective parties are bound by its terms. § 60–01–10, N.D.C.C. Therefore, we find that the relationship is one of bailor and bailee and not one of landlord and tenant. In so doing, this court gives appre-

ciable weight to the findings of fact of the trial court with reference to the findings concerning the bailor-bailee relationship. Lee v. Johnson, 154 N.W.2d 382 (N.D.1967).; Burwick v. Saetz, 154 N.W. 2d 679 (N.D.1967); McKenzie v. Hanson, 143 N.W.2d 697 (N.D.1966).

Having decided that a bailor-bailee relationship existed, it will be necessary to determine whether the bailment contract was limited to the merchandise located in the old warehouse and, in addition, whether the contract also included the merchandise which was being received by Olson, Mobil's consignee, during the construction of Mobil's new warehouse.

Section 9–07–02, N.D.C.C., provides:

"The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."

A perusal of the contract reveals that the parties were fully cognizant of the merchandise which was stored in Mobil's old warehouse and such merchandise was to be moved to the temporary storage facility, stored for a period of time, and then transferred to the new facility upon its completion. The terms of this contract with reference to this merchandise are unambiguous and, accordingly, Work Order No. 122 (designated as the storage contract) covered the oil, grease, and other merchandise in existence and stored in Mobil's original warehouse.

We are next confronted with determining whether the merchandise received by Mobil's consignee during the construction period was also encompassed within the terms of Work Order No. 122.

The purpose of construing a contract is to ascertain and give effect to the mutual intention of the parties as it existed at the time of contracting insofar as the same is ascertainable and lawful. § 9–07–03, N.D.C.C.; Ireland v. Charlesworth, 98 N.W.2d 224 (N.D.1959). When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. § 9–07–04, N.D. C.C.; Baird v. Fuerst, 60 N.D. 592, 235 N.W. 594 (1931). A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties. § 9–07–08, N.D.C.C.; Gunderson v. Johnson, *supra*; Young v. Metcalf Land Co., 18 N.D. 441, 122 N.W. 1101 (1909).

The intention of the parties to a written bailment must be determined not from what the parties thought, but from the language of the contract itself. 8 Am.Jur. 2d, Bailments § 127, p. 1022. In the instant case, both of the parties were aware that Mobil's consignee would be receiving shipments of merchandise for resale to his customers; that he would be selling various items, and perhaps all of the items stored, from the merchandise stock; that such items would be replaced in inventory and such business activity could not be interrupted by the construction of the new warehouse. The very basis of the contract, together with the intention of the parties, the acts of the parties, and the application of principles of contract law set forth above, compels us to find that the merchandise being received during the time of construction was considered as coming within the terms of the contract.

Having concluded that the contract covered all of the merchandise, it is necessary to determine the respective liabilities of the parties to this agreement, pursuant to the provisions of Work Order No. 122. Mobil, in its counterclaim, alleges that Great Plains negligently caused damage to Mobil's merchandise. Great Plains, in its amended reply to the counterclaim, asserted Mobil's contributory negligence as a defense and added the further defense that Mobil at all times had knowledge of the condition and location of the temporary warehouse, had access to and control of

the temporary warehouse, and therefore assumed the risk of damage or loss.

A review of the testimony indicates that the merchandise was damaged, resulting from an unprecedented rain which caused the storm sewers of the city to overflow and flood the temporary warehouse. Further damage occurred to the merchandise from rainwater leaking through the roof of the temporary warehouse.

Olson had access to and control of Mobil's merchandise stored in the temporary warehouse during the period of time pertinent to this lawsuit. Olson was responsible for delivering the first merchandise for storage in the temporary warehouse and he made no complaints concerning the condition of the warehouse at that time. He further testified that his first complaint to Great Plains about the condition of the temporary warehouse was made about June 20, 1966, which testimony was refuted by Johnson, who testified that no complaints were made until after the particularly heavy rain which occurred about July 1, 1966. After discovering that the merchandise was wet, or was getting wet, the only action that Olson took was to inquire of Johnson and Snyder if they knew where he could secure some plastic covering to protect the merchandise. Olson admitted that neither he nor any other Mobil representative had made any attempt to locate or secure a plastic covering or a tarpaulin to protect Mobil's merchandise, stored in the temporary warehouse. Both Junchen and Loepp, the other Mobil representatives, had visited in Parshall but neither of them had inspected the temporary warehouse nor had complained of its unsuitability.

The record indicates that the merchandise stored in the temporary warehouse was transported to Mobil's new warehouse prior to its completion, since the lease on the Snyder warehouse expired on July 1, 1966. Mobil contends that the merchandise was thereafter further damaged by rain because the roof and sides of the new warehouse were not completed at that time. The record also indicates that Mobil determined that the merchandise had been damaged to such an extent that it was necessary for Mobil to destroy it. The value of the destroyed merchandise forms the basis for Mobil's counterclaim.

Mobil's primary argument concerning the negligence of Great Plains is directed to the damages which occurred to Mobil's merchandise while it was stored in the temporary storage facility. According to the contract, Great Plains was to provide the temporary storage facility.

■ Great Plains, as the bailee, and as a depositary for hire, must use at least ordinary care for the preservation of the merchandise deposited. § 60–01–11, N.D. C.C.; Lee v. Johnson, *supra*; McKenzie v. Hanson, *supra*. Great Plains and Mobil entered into a specific contract for the moving, storage, and return of the merchandise. The contract provision regarding liability set forth on the back of the contract reads:

"7. If the work relates to any article entrusted to Contractor, Contractor assumes all risk of loss of or damage to the article while it is in Contractor's possession or under Contractor's control. In the event of loss or irreparable damage, Contractor shall promptly reimburse Mobil for the value of the article specified on the face of this order. Any other damage shall be promptly repaired by Contractor at Contractor's expense." [Work Order No. 122, ¶ 7.]

In 8 Am.Jur.2d, Bailments § 140, at pages 1035–1036, it is stated that:

"An express agreement by the bailee not merely to return the subject of the bailment in good condition, but to repair all damages occasioned by accident or casualty, or to be 'responsible' for, or to repair, any loss or damage, barring ordinary wear and tear, creates an unconditional obligation, and for loss or damage not excepted the bailee is liable

irrespective of his negligence or fault. The bailee becomes an insurer also where he enters into a special contract to return the property in good condition or to pay its value, and is liable for any loss which occurs while it is in his possession, even though without his fault. And where he contracts specially to return the bailed property in as good condition as when received, saving some other exception or exceptions than ordinary wear and tear, such exceptions may be regarded as exclusive, and he may be liable as an insurer for loss from other causes, although without his fault."

█ A contract of hire between the bailor and bailee that the bailee will return the property, and where bailee assumes all risk of loss or damage while it is in bailee's possession or under its control and in the event of loss or irreparable damage will pay for the property, creates a liability on the bailee greater than that imposed by law in the absence of a special contract. Grady v. Schweinler, 16 N.D. 452, 113 N.W. 1031, 14 L.R.A.,N.S., 1089 (1907).

█ A careful reading of the provisions of the contract indicates that Great Plains became an insurer of the property. Great Plains urges that the contract provision on the back of Work Order No. 122 should not be considered controlling because of Mobil's use, access, and control of its merchandise, and, as a consequence, the responsibility for unexpected loss should fall upon Mobil, who shared use, access, and control. However, where a party by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his own contract. The proper interpretation of the contract is to be determined by the general rules of construction recognized by the law; and, if the parties have improvidently made their contract more onerous than they expected, the difficulty cannot be removed by a violation of these rules. Grady v. Schweinler, *supra*.

In the instant case, the acts of the parties and the facts adduced at the trial, together with the fact that Mobil drew the contract and, accordingly, that the provisions of the contract should be construed against Mobil, would generally afford relief to Great Plains. However, this court cannot, in view of the specific provisions of contract liability, eliminate and disregard the obligations which Great Plains assumed under such a contract. We find that the language of the contract clearly indicates that it was the intent of the parties that the bailee would assume all losses and the contract determined the responsibility of the parties in the event a loss occurred.

█ We next turn to Mobil's liability under the provisions of its contract with Great Plains. Mobil, as the bailor, had certain obligations of which it became aware during the period of time that the work order was in force and effect. A review of the record reveals that Mobil, when the contract was executed, had actual or constructive notice of the condition of the building which was to be used for the storage of its merchandise; that, during the period of construction of the new warehouse, Mr. Olson, Mobil's agent, was aware of the existing condition of the building and had opportunity to observe the building's condition each time that he entered it, and that he was aware of the leaking of the roof; and that a very limited effort was made by Olson to preserve the merchandise. It is further urged that damages also occurred by virtue of the merchandise being moved into the new warehouse while it was still under construction and that, accordingly, Great Plains would be liable for such damages. Assuming that there was a breach of the contract by virtue of Snyder's delivery of the merchandise to the new warehouse, pursuant to the terms of the contract, the record does not reveal that Mobil has proved any damages as the result of the return of the merchandise, nor does the record reveal sufficient proof of damages as a result of the moisture and excess rainfall which affected the merchandise

while it was stored in the temporary warehouse. There was no other testimony or exhibits offered to prove damages except Exhibit H, which set forth the merchandise inventory and the purported damages, in answers to plaintiff's interrogatories. Damages will not be presumed and must be proved. Graven v. Backus, 163 N.W.2d 320 (N.D. 1968).

For reasons hereinafter explained we hold that Mobil has failed to sustain its burden of proof as to damages.

Are Mobil's answers to interrogatories by Great Plains, during pretrial discovery, admissible on behalf of Mobil at the trial as evidence of its damages?

The record indicates that counsel for Great Plains served various interrogatories on Mobil, and those pertinent to the instant discussion are:

"3. State in detail the items of merchandise claimed to have been damaged.

"4. State in detail the amount of the damages claimed for each item of merchandise claimed to have been damaged."

These interrogatories were answered by Mobil's attorneys, based on information received from Mobil's accounting office in Milwaukee, Wisconsin. At the trial, Mobil attempted to introduce these answers to Great Plains' interrogatories as evidence of Mobil's damage. Great Plains objected to the introduction of interrogatories on the basis that they lacked foundation and that Great Plains was being denied the right to cross-examine the persons who prepared the estimated value of the damaged merchandise.

The discussion in the transcript relative to the introduction by Mobil of its answers to the interrogatories posed by Great Plains indicates that Mobil's counsel was not convinced that the interrogatories were properly introduced.

"THE COURT: Well, why not offer the exhibit, the inventory itself? This has not been offered.

"MR. KERIAN: No, it has not been offered, your Honor. I will say that it is part of the Court record because this is in response to answers to interrogatories that the Court has heretofore not had that had been served on Mr. Meschke at his request and so they are a part of the record but I just wanted to get this on the record through Mr. Stavert.

"THE COURT: Well, have the particular inventory marked as an exhibit.

"(Defendant's Exhibit H marked for identification.)

"MR. KERIAN: *Well, obviously, Your Honor, this is not the proper man through whom this should be offered inasmuch as it is in response and this is answers to Plaintiff's interrogatories.* [Emphasis added.]

"THE COURT: What is the exhibit number?

"MR. KERIAN: Exhibit H, so indulging the Court's discretion, I would ask that Exhibit H be received.

"THE COURT: You offer Exhibit H?

"MR. KERIAN: I offer Exhibit H.

"THE COURT: Any objections?

"MR. MESCHKE: Your Honor, the Plaintiff here is entitled to cross-examine as to how the price was determined. For that reason, Your Honor, I do feel I must stand on objection as to foundation of the exhibit."

The trial court, however, allowed the use of interrogatories as evidence of the amount of damages, and, in so doing, relied on Rule 33 and Rule 26(d) of the North Dakota Rules of Civil Procedure.

Great Plains contends that the above ruling of the trial court was prejudicial error.

The North Dakota Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, and the wording of Rules 33 and 26(d) of the North Dakota Rules of Civil Procedure and the Federal Rules of Civil Procedure is virtually identical. Since there are no North Dakota decisions concerning these particular Rules, the decisions of several Federal and of other State courts which have interpreted these Rules will be considered.

Rule 33, Federal Rules of Civil Procedure, which provides for the submission of written interrogatories to an adverse party, as originally adopted, did not specifically provide how the answers to such interrogatories could be used at a trial. Rule 33, Fed.R.Civ.P., however, was amended in 1948 to provide that answers to interrogatories may be used to the same extent that the deposition of a party could be used under Rule 26(d), Fed.R.Civ.P. See 2A Barron & Holtzoff, Federal Practice and Procedure (Wright Rules ed.) § 778, pp. 390–391; 4 Moore's Federal Practice (2nd ed.) ¶ 33.29, pp. 2420.4, 2420.5; 13 A.L.R.3d 1312, 1327.

Haskell Plumbing & Heating Co. v. Weeks, 237 F.2d 263, 16 Alaska 436 (9th Cir.1956), involved an issue similar to that in the instant case. In *Haskell* the appellate court held that the trial court had properly determined that the defendant was liable to the plaintiffs but remanded the case for the taking of further evidence of damages, because:

" * * * the [trial] court suggested that the proceedings might be shortened greatly if the plaintiffs would offer in evidence as proof of the damage and loss suffered by the other plaintiffs, their several answers given in response to interrogatories which had been propounded to each of them by the defendant. Counsel for the plaintiffs acquiesced in this suggestion and the court admitted these

answers upon the theory that they would be admissible as evidence on behalf of the plaintiffs under that portion of Rule 33, as amended, which provides:

' * * * and the answers may be used to the same extent as provided in Rule 26(d) for the use of a deposition of a party.'

This ruling was made over the objection of the defendant.

"It seems clear that the trial court was in error in permitting these answers, which were self-serving, to be introduced on behalf of the plaintiffs and that this error was compounded by refusal to permit the plaintiffs to be cross-examined upon the question of the amount of their losses. It is true that Rule 26(d) permits the use of depositions or portions thereof, but only 'so far as admissible under the rules of evidence'. The rules of evidence would permit answers such as these to be used against the party giving them, but because they are self-serving they should not have been admitted on behalf of these plaintiffs. Lobel v. American Airlines, 2 Cir., 192 F.2d 217, 221. See 4 Moore's Federal Practice (1950 ed.) § 33.29." [Haskell Plumbing & Heating Co. v. Weeks, *supra* 237 F.2d at 266–267.]

Other courts have stated that usually the answers to interrogatories may not be introduced by one answering the interrogatories, and they base their reasoning on two grounds: first, that the answers would be self-serving; and, second, that there would be no opportunity provided for cross-examination.

■ In Bailey v. New England Mut. Life Ins. Co., 1 F.R.D. 494 (Cal.Dist.Ct. 1940), the plaintiff served written interrogatories upon the defendant, pursuant to Rule 33, Fed.R.Civ.P., and the defendant answered within the required time. At the trial the defendant offered in evidence the answers to the interrogatories, and the plaintiff objected. The court, after consid-

ering Rules 33 and 26(d), Fed.R.Civ.P., sustained the plaintiff's objection, and stated:

"The answers, not because Rule 33 so provides, but, under the general rule of evidence, may be used, as a confession, or for impeachment *but not by the answering party as a self-serving statement free from the hazards of cross-examination.*" [Emphasis added.] 1 F.R.D. at 495.

In Callaway v. Perdue, 238 Ark. 652, 385 S.W.2d 4, 13 A.L.R.3d 1300 (1964), one of the defendant's attorneys attempted to introduce the answers to the interrogatories of the defendant because the defendant was confined to a hospital bed. The court refused to admit the answers to the interrogatories, stating:

"Careful research reveals that counsel is in error in his contention, and he is not entitled to use these interrogatories. * * * Federal cases do not sustain appellant's position, and the answers to interrogatories are generally held inadmissible, if offered on behalf of the party making answer, as 'self-serving declarations.'" 385 S.W.2d at 9.

The court went on to say:

"* * * One of the principal reasons for not allowing the use of the interrogatories on behalf of the answering party is the fact that there is no opportunity for cross-examination. In reviewing various cases, one exception to the non-admissibility of interrogatories is noted, *viz,* where the adverse party offers part of the answers to the interrogatories, the person making answer is entitled to read any other answer which tends to explain or correct the answers offered by the adverse party." 385 S.W.2d at 9.

In United States v. Smith, 95 F.Supp. 622–625 (W.D.Pa.1951), the court stated that it would not be proper for the defendant to establish her defense by using answers to interrogatories asked of her since they would be self-serving statements and therefore would have no evidentiary value.

The court stated, in Grace & Co. v. City of Los Angeles, 278 F.2d 771 (9th Cir. 1960), that a party generally could not introduce his self-serving answers to an opponent's interrogatories, but an exception arises when the one who proposed the interrogatories introduced only part of them, and in that case the answering party may read any other answer which tends to explain or correct that portion already introduced. See also 2A Barron & Holtzoff, Federal Practice and Procedure § 778, pp. 390–391.

In Town of River Junction v. Maryland Casualty Co., 110 F.2d 278, 283 (5th Cir. 1940), the court said that the purpose of—

"* * * interrogatories are exploratory, intended to find out facts and witnesses and documents so the propounder may thereafter prepare to prove his case in an orderly manner."

In the instant case the trial court permitted Mobil to introduce its answers to interrogatories posed by Great Plains as the sole evidence of damages, and based its ruling on the provision set forth in Rule 26(d) (3), N.D.R.Civ.P., when the witness was at a greater distance than 100 miles from the place of the trial or was out of the State. This ruling was prejudicial error, because the answers would be self-serving and Great Plains would not be afforded an opportunity to cross-examine as to the method used by Mobil in arriving at the stated amount of damages. Cases decided both before and after the 1948 amendment to Rule 33, Fed.R.Civ.P., generally hold that the answers to interrogatories cannot be introduced by the person answering unless they can be brought within the purview of Rule 26(d) (3), Fed.R.Civ.P., which authorizes the use of interrogatories "for any purpose". 13 A.L.R.3d 1312, 1328.

It should be noted, however, that even in the situations listed in Rule 26(d) (3), there is still the restriction that the answers are admissible "only so far as admissible under

the rules of evidence". 4 Moore's Federal Practice (2d ed.) ¶ 33.29, p. 2420.6.

Thus, even though the person who answered the interrogatories was out of the State, such instance is not a proper ground to permit the interrogatories to be introduced in evidence, because Mobil could easily have provided a qualified witness to appear in court and testify as to the value · of the allegedly damaged merchandise. In addition, the answers would certainly be self-serving and Great Plains therefore would have no opportunity to cross-examine and be confronted by the witness. 2A Barron & Holtzoff, Federal Practice and Procedure § 778, p. 390, and cases cited in n. 74; 4 Moore's Federal Practice ¶ 33.29, p. 2420.6, and material in n. 7.

Nor has Mobil complied with the Uniform Business Records as Evidence Act. § 31–08–01, N.D.C.C., provides in part:

"A record of an act, condition, or event shall be competent evidence, in so far as relevant, if:

"1. The custodian or other qualified witness testifies to its identity and the mode of its preparation; * * *."

In the case· at bar, a review of the record indicates that Stavert, a witness for Mobil, candidly testified that the pricing of the damaged merchandise was computed by another, unidentified employee of Mobil, at its offices in Milwaukee, Wisconsin, and that Stavert possessed no information or knowledge concerning the formula employed in pricing the merchandise. Certainly, where the information for the answers to the interrogatories set forth in Mobil's Exhibit H was only partially compiled by Stavert, and he was unable to testify concerning the basis for the figures affixed thereto, which figures are the foundation for Mobil's alleged damages, the exhibit should not have been admitted as competent evidence.

Exhibit H does not constitute competent evidence when considered in light of Rule 33, and especially in conjunction with that portion of Rule 26(d) which reads as follows:

"RULE 26. *Depositions Pending Action*

"(*d*) *Use of depositions.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence * * *.",

because the answers would be self-serving and no opportunity to cross-examine the witness would be afforded the adverse party. 2A Barron & Holtzoff, Federal Practice and Procedure, *supra;* 4 Moore's Federal Practice, *supra.* 13 A.L.R.3d 1312, 1328.

We find that the trial court's ruling which allowed Mobil to introduce its answers made to interrogatories posed by Great Plains was error.

For reasons stated in the opinion the judgment of the trial court is reversed and a new trial is granted.

As Mobil's efforts to mitigate damages may be an issue in the new trial, we direct the trial court's attention to the rule with reference to mitigation of damages set forth in Nicola v. Meisner, 84 N.W.2d 702 (N.D.1957), and reaffirmed in Stetson v. Investors Oil, Inc., 140 N.W.2d 349 (N.D. 1966).

TEIGEN, C. J., and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.