CHECK CONTROL, INC., Plaintiff and Appellee,

v.

Donald R. SHEPHERD and Terri Shepherd, Defendants and Appellants.

Civ. No. 900222.

Supreme Court of North Dakota.

Nov. 13, 1990.

Wheeler, Wolf Law Office, Bismarck, for defendants and appellants; argued by R.W. Wheeler.

Ray H. Walton, P.C. (argued), Bismarck, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Donald R. Shepherd and Terri Shepherd (Shepherds) appeal from the amended judgment of the District Court for the South Central Judicial District dated April 4, 1990. The district court entered the amended judgment in favor of the plaintiffs, Check Control, Inc. (CCI), in its claim seeking enforcement of a franchise agreement between the parties, and dismissed the defendants', the Shepherds', counterclaim based upon a failure of consideration. We affirm.

CCI is a North Dakota Corporation engaged in the business of collecting accounts receivable and NSF checks. In 1984, CCI registered its offer of sale of Check Control franchises with the Securities Commissioner of North Dakota under Chapter 51-19, N.D.C.C. (franchise investment law).

On or about September 10, 1984, Donald Shepherd was contacted by CCI regarding the possible purchase of a Check Control franchise. Being interested in the proposal, Shepherd arranged to work at the Bismarck offices of CCI for a number of weeks in order to be exposed to, and learn, the daily operations of CCI. On October 22, 1984, the Shepherds signed a franchise agreement with CCI to operate a Check Control franchise in Minnesota.

In October 1984, the Shepherds moved to Minneapolis, Minnesota, with the intention of operating a Check Control franchise. Prior to leaving Bismarck, they applied for an appropriate license from the state of Minnesota to operate as a check collection agency, providing the address of an office location which had been represented by CCI as ready for Check Control operations. *See* Minn.Stat.Ann. §§ 332.31–.45 (West 1981 & Supp.1990). However, upon arrival in Minneapolis, the Shepherds discovered that the office space was not available and that the landlord had impounded all of the office equipment. The Shepherds were then forced to find alternative rental space and reapply for licensure.

Subsequent to the Shepherds' reapplication for licensure, the Shepherds discovered CCI was not registered to sell franchises within the state of Minnesota. Upon being notified of this deficiency, CCI promptly filed the necessary application. Pursuant to Minnesota law (Minn.Stat.Ann. §§ 80C.01–.22 (West 1986 & Supp.1990)),

CCI granted the Shepherds an opportunity to rescind the existing franchise agreement and provided the Shepherds with a copy of CCI's offering circular. On December 14, 1984, the Shepherds provided CCI with a written notice of refusal to rescind, and acknowledged receipt of the circular which notified them of their rights and obligations as a franchisee. The Shepherds began operating the franchise in late January of 1985.

The franchise agreement between the parties required the Shepherds to pay CCI $20,000 in franchise fees, $5,000 of which was to be paid upon signing the agreement, with an additional $5,000 due upon the start of operations.[1] The balance of the $20,000 ($10,000) was to be paid at a rate of $500 per month beginning when the franchise business averaged at least 350 checks per month. In addition to the $20,000 franchise fee, the contract called for royalty payments in the amount of 50 cents per collected check to be paid to CCI.

The Shepherds did not make the $5,000 payment toward the franchise fee at the start of their operations as had been agreed upon by the parties. In September and October of 1985, the Shepherds made the agreed upon $500 payments toward the franchise fee and began to pay royalties to CCI. The Shepherds continued making royalty payments until October, 1986. During this period they made one additional $500 payment toward the franchise fee. The Shepherds then failed to pay either the installments toward the franchise fee or the required royalties. CCI then made a number of telephone calls to the Shepherds during November and December, 1986, and January 1987 requesting payment of royalties and the franchise fee. In January 1987 the Shepherds tendered payment for the royalties which had accrued to that date.

In February 1987 the Shepherds resumed their installment payments on the franchise fee and continued to make royalty payments. The installments were paid until October 1987 when a total of $5,000 in installments had been paid, making the total payment on the franchise fee $10,000. The payment of royalties continued until the end of January 1988. No further payments were made by Shepherds to CCI. The $5,000 installment due upon the start of franchise operation also remained unpaid.

CCI brought an action to recover on the contract in the District Court for the South Central Judicial District. The district court entered an amended judgment in favor of CCI, awarding the sum of $14,776 "plus the amount due under the Royalty Agreement for all checks processed by Defendants from and after May 1, 1989 and for all checks processed in the future at the rate of 50 cents per check"; and ordering an accounting and assessing costs. The Shepherds appeal from the amended judgment on the following grounds: 1) a failure of consideration on the part of CCI renders the contract unenforceable, 2) the Shepherds did not waive the right to rescind the contract which arises from CCI's failure to properly perform, 3) the Shepherds were fraudulently induced into signing the agreement and therefore the contract is unenforceable, and 4) the Shepherds were fraudulently induced into continuing the payments under the contract.

The Shepherds' first contention is that the franchise agreement is unenforceable because of a failure of consideration. Failure of consideration arises when a valid contract has been formed, but the performance bargained for has not been rendered. *First National Bank of Belfield v. Burich*, 367 N.W.2d 148, 152 (N.D.1985) (citing *Franklin v. Carpenter*, 309 Minn. 419, 244 N.W.2d 492 (1976)). This should be distinguished from lack of consideration, which prevents an enforceable contract from ever being formed. *Harrington v. Harrington*, 365 N.W.2d 552, 555 (N.D. 1985). The determination of whether or not there has been a failure of consideration is a question of fact which will not be

---

**1.** Initially, there seemed to be a dispute over whether or not the additional $5,000 was due upon the start of operations. However, Donald Shepherd at trial, and counsel for the Shepherds during oral argument, acknowledged that this payment was to be made at that time.

disturbed unless it is found to be clearly erroneous. *Burich,* 367 N.W.2d at 153.

■ The Shepherds maintain that CCI failed to provide a number of promised services. Among these unperformed promises were the following: employee training, performance evaluations and/or standards, promotional and account solicitation assistance, provision of office equipment in Minneapolis, and payment for the franchise bond and license.[2] Because CCI failed to render these promised services the Shepherds claim the very object of the agreement has been defeated. Where there is a total failure of consideration, the non-breaching party is excused from performing its obligations under the contract. *Burich,* 367 N.W.2d at 153 (citing *Aberle v. North Dakota B & B Perm. & Tem. Per. Sys.,* 186 N.W.2d 446 (N.D.1971)). The Shepherds argue that any obligations they had under the contract have been discharged by CCI's failure to perform substantially all of its obligations under the contract.

■ A failure of consideration may be either partial or total. *Burich,* 367 N.W.2d at 152; *Schaff v. Kennelly,* 61 N.W.2d 538, 544 (N.D.1953). A total failure of consideration will occur where a party has failed to perform a substantial part of its obligation, so as to defeat the very object of the agreement. *Burich,* 367 N.W.2d at 153; *Lawrence v. Lawrence,* 217 N.W.2d 792, 796 (N.D.1974); *Schaff,* 61 N.W.2d at 544. The remedy for a total failure of consideration is to excuse the non-breaching party from performance of its obligations under the agreement. *Burich,* 367 N.W.2d at 153. A partial failure of consideration occurs when there has been an insubstantial breach that leaves sufficient consideration for sustaining the contract. *Id.* (citing *Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239 (Mo.App.1982)). Where a partial failure of consideration has occurred the proper remedy is to grant appropriate damages to the non-breaching party. *Id.*

(citing *Ralston Purina Co. v. Jungers,* 86 S.D. 583, 199 N.W.2d 600 (1972)).

Before moving to Minneapolis, Donald Shepherd spent a number of weeks with CCI learning the procedures and operation of a check collection service. Upon arriving in Minneapolis, the Shepherds began the operation of a Check Control franchise in which they implemented the procedures used by Check Control, Inc., and utilized the name and logo of Check Control, Inc. During the trial, Donald Shepherd indicated that he had no familiarity with the collection business before his association with Check Control and that the Shepherds did not want to discontinue the use of the Check Control logo and insignia.

In its memorandum opinion, dated March 13, 1990, the trial court made a number of findings of fact concerning the question of consideration. The trial court found that the Shepherds did not want to rescind the contract, but, to the contrary, desired to continue using the name and logo of CCI. Additionally, the trial court found that if the Shepherds had benefited from the training or procedures used by CCI, or contained in CCI's operation materials, adequate consideration had been given to the Shepherds. In light of this evidence, the trial court concluded that the contract between the parties did not fail for want of consideration.

■ As previously stated, our review of the trial court's findings of whether or not there has been a failure of consideration is governed by the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *Burich,* 367 N.W.2d at 153. In applying the "clearly erroneous" standard we must keep in mind that we will not substitute our judgment for that of the trial court. *Miller Enterprises v. Dog N' Cat Pet Ctrs.,* 447 N.W.2d 639, 644 (N.D.1989). It is not sufficient that we merely may have viewed the facts differently if we had been the trier of fact. *Id.* at 644. Instead, in order to hold that the trial court's finding was clearly

**2.** It should be noted that this part of the opinion is directed at the Shepherds' assertion that there has been a failure of consideration. Further discussion within this opinion will focus upon the Shepherds' waiver of some of the unperformed services and the Shepherds' failure to keep the promises it made.

erroneous, we must determine that the finding has no support in the evidence or, although some evidence exists to support the finding, we are left with a definite and firm conviction that a mistake has been made. *Id.* The trial court found that sufficient consideration was provided by CCI to allow enforcement of the agreement. Although some evidence tends to show that CCI failed to perform many of its promises, we are not left with a definite and firm conviction that a mistake has been made. Therefore, we do not believe that this finding of the trial court, that there was not a total failure of consideration, was clearly erroneous.

■ The Shepherds' second contention is that the district court erred in finding that the Shepherds waived their right to assert the franchise contract was unenforceable.

■ The rescission of a contract is governed by sections 9–09–01 to 9–09–04, N.D.C.C. A party will be granted rescission only if the party acts with reasonable diligence to rescind promptly and restore to the other party the value which was received under the contract. *Holcomb v. Zinke,* 365 N.W.2d 507, 510 (N.D.1985). A party waives the right of rescission if the party fails to promptly exercise that right upon discovering the facts necessary for rescission. *Holcomb,* 365 N.W.2d at 510; *Lindemann v. Lindemann,* 336 N.W.2d 112, 116 (N.D.1983). The timeliness of a decision to rescind is a question of fact subject to the circumstances of each particular case. *Robertson Companies, Inc. v. Kenner,* 311 N.W.2d 194, 198 (N.D.1981). Our review of this issue is therefore limited to whether or not the findings of the district court were clearly erroneous. *Id.;* Rule 52(a), N.D.R.Civ.P.

The district court determined that the Shepherds had waived their right to rescind the contract and were therefore estopped from seeking a rescission. The district court found that the Shepherds had several adequate opportunities to rescind the contract. In particular, the district court noted that the Shepherds were provided with an opportunity to rescind by CCI, pursuant to Minnesota franchise law. On December 14, 1989, the Shepherds notified CCI that they did not intend to rescind the agreement. This refusal to rescind occurred after the Shepherds had knowledge that CCI had failed to provide office space and equipment upon the Shepherds' arrival in Minneapolis. In light of these facts and that they have not tendered a return of all value received under the contract, we conclude the district court's findings on this issue are not clearly erroneous.

■ The Shepherds' third contention on appeal is that the trial court erred by not finding that they were fraudulently induced into signing the franchise agreement. The Shepherds' fourth contention on appeal is that the district court erred in not finding that the Shepherds were fraudulently induced into continuing their payments. The Shepherds' answer to CCI's complaint did not specifically raise the issue of fraud. The failure to plead a compulsory counterclaim will generally bar the litigation of that claim in that action. *Harrington v. Harrington,* 365 N.W.2d at 557 (citing *Leo Lumber Company v. Williams,* 191 N.W.2d 573 (N.D.1971)). An issue which is not properly raised in the pleadings but is tried by the express or implied consent of the parties will be treated in all respects as having been raised in the pleadings. *Harrington,* 365 N.W.2d at 557 (citing *Graven v. Backus,* 163 N.W.2d 320, 321 (N.D.1968); N.D.R.Civ.P. 15(b)). The issue that fraud was not properly asserted at trial court was not raised in the trial court, but because both parties addressed the issues of fraud at trial and the district court made findings concerning the issues raised, we decline to rule that the Shepherds failed to properly raise the issues concerning fraud.

As we have previously stated, our review of the trial court's findings is limited to determining whether or not the trial court's findings were clearly erroneous. *E.g. Miller Enterprises v. Dog N' Cat Pet Ctrs.,* 447 N.W.2d at 644. It should be noted that in the above case we affirmed the judgment of the trial court whereas in this case we are asked to reverse the trial court's amended judgment. Those who assert that

the trial court's findings of fact are clearly erroneous have the burden demonstrating the error.

 Due regard must be given to the trial court's opportunity to assess the credibility and observe the demeanor of the witnesses. *Id.* Upon a review of the findings on appeal, we will not substitute our judgment for that of the trial court nor reverse the trial court's findings merely because we may have reviewed the evidence differently had we been the trier of fact. *Id.* The findings of the trial court will be held to be clearly erroneous under Rule 52(a), N.D.R.Civ.P., where there is no evidence to support the findings or, although some evidence exists to support the findings, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

The district court, after a review of all of the evidence and testimony, found that CCI had not committed fraud. Evidence was presented by CCI that it had offered to perform the services it had promised such as providing training to the Shepherds' employees. The Shepherds contend that no such offers were made and that CCI never intended to perform its obligation. After weighing the evidence submitted at trial, the district court determined that CCI had not committed acts of fraud. The evidence asserting fraud was provided through the testimony of the Shepherds which attempted to show that CCI never intended to perform the obligations it had orally promised to do and represented it would do in its offering circular. The counter evidence is the testimony of CCI employees which indicates that CCI offered to perform those services. CCI also offered a number of sales receipts which indicate that CCI had purchased supplies for the Minneapolis franchise. Reviewing the findings, as we must, in light of all the evidence, we are not left with a definite and firm conviction that the trial court erred in finding that CCI did not act fraudulently.

In addition, we agree with the trial court that the Shepherds' claims of being fraudulently induced into the franchise agreement were waived as they did fail to timely seek relief. A party who seeks the rescission of a contract must use reasonable diligence to promptly rescind upon the discovery of the fraud. *Holcomb,* 365 N.W.2d at 510. In addition to acting with reasonable diligence, the party seeking rescission must also restore to the other party anything of value received under the contract. *Id.* A failure by a party to timely assert these rights constitutes a waiver of such rights. *Id.*

For the reasons stated in this opinion, the amended judgment of the district court is affirmed with costs on appeal to CCI.

VANDE WALLE, LEVINE, MESCHKE, GIERKE, JJ., concur.