Harold TWEETEN, Plaintiff and Appellee,

v.

John A. MILLER and Lorraine Miller, Defendants and Appellants.

Civ. No. 910061.

Supreme Court of North Dakota.

Nov. 20, 1991.

Vogel Law Firm, Mandan, for plaintiff and appellee, argued by Joseph A. Vogel, Jr., Mandan.

Lucas and Smith, Bismarck, for defendants and appellants, argued by Sheldon A. Smith, Bismarck.

GIERKE, Justice.

Defendant, John A. Miller (Miller), appeals from the district court judgment which held that the plaintiff, Harold Tweeten (Tweeten), should receive 55% of the proceeds from the sale of calves which he raised pursuant to a Livestock Lease Agreement. We affirm.

Miller's cattle operation was severely affected by the drought in 1987 and 1988. Miller placed an advertisement in a local newspaper to lease his cattle on a share basis with someone who had adequate pasture and hay. This ad was answered by Tweeten. Miller toured Tweeten's farm and found it to be adequate. On November 22, 1988, Tweeten entered into a lease agreement with Miller. The agreement required that Tweeten supply the pasture, feed, hays, grain, mineral, cake, salt and vaccine and any other things necessary for the care of the cattle. Miller was to supply 75 Registered Angus and crossbred commercial cows to Tweeten to care for. The proceeds from the calf production was to be divided, 45% to Miller and 55% to Tweeten. The contract required Miller to furnish one Registered bull. Miller reserved the right to check on the cattle upon notification of Tweeten. Death loss of cows was to be the responsibility of Miller unless such death was due to the total negligence of Tweeten.

On September 27, 1989, fifty-six calves were sold at Kist Livestock in Mandan, North Dakota. A check was issued to Tweeten, Miller and Norwest Bank [1] in the amount of $19,253.92. Miller endorsed the check but Norwest Bank, on instructions from Miller, refused to pay Tweeten. Tweeten sought his share of the proceeds pursuant to the agreement, and this litigation ensued.

Miller contends that due to Tweeten's negligent treatment of the cattle he was damaged. Miller claims that the negligent treatment resulted in the loss of cattle and contributed to the poor quality of calves that were produced. Miller therefore counterclaimed for damages on the basis of Tweeten's negligence.

During the time that Tweeten cared for the herd, nine cows died and nineteen calves [2] were lost. Testimony at the trial established that some of the remaining calves were underweight when they were sold in September. The court recognized that the death losses were higher than normal but found there was no evidence presented that Tweeten was negligent in the treatment or care of the cattle and calves.

The court also found that if Miller had been dissatisfied with the treatment he should have taken more care to monitor the cattle and insisted on different treatment. Therefore, the court granted 55% of the money held at Norwest Bank to the plaintiff, Tweeten.

On appeal, Miller alleges two errors. First, Miller claims that the trial court erred when it found that Tweeten was not

---

1. Norwest Bank of Mandan had a lien on Miller's cattle. Tweeten received a letter from Norwest on November 29, 1988, which released this lien with respect to Tweeten's percentage under the lease.

2. This figure for lost calves was calculated in the following manner: 4 cows were without calves in the Spring of 1989; 5 cows died before delivering; and 10 calves died from scours, being stepped on, were stillborn or born premature.

negligent in the care of the cattle. Second, Miller contends that the court erred when it found that Miller had a duty to ensure that Tweeten was fulfilling his obligation under the contract.

To support his first argument, Miller argues that the trial court erred when it found that Tweeten was not negligent in the care of the cattle. Miller cites a Utah case which holds that when cattle are delivered in good condition, a presumption arises against the bailee when cattle are lost. *Baker v. Hansen*, 666 P.2d 315 (Utah 1983). In such a case, it would then be the responsibility of the bailee to come forward with evidence of no negligence.

Under North Dakota law, ordinary care is required by someone who has temporary possession of the personal property of another under a contract. *See* Section 47–15–04, N.D.C.C. North Dakota law also provides that the hirer of personal property must repair all deteriorations or injuries thereto occasioned by his ordinary or gross negligence. Section 47–15–07, N.D.C.C.

We need not determine whether to adopt the presumption set forth in *Baker, supra,* because the facts of this case clearly distinguish it from *Baker.*

The contract in this case specifies that, "Death loss on cows is the responsibility of Mr. Miller, unless it was due to total negligence in Mr. Tweeten's part, then he would assume responsibility." This assumption of the loss by Mr. Miller indicates that only "total negligence" on the part of Tweeten would render him liable for the death of any cows. There was also a showing that at least some of the cattle were "gummers" (toothless cows) and thus not in good condition at the time of delivery. Tweeten also offered substantial evidence as to the adequacy of the care of the cattle. In *Baker, supra,* the good condition of the cattle upon delivery was not disputed and there was a total failure to present any evidence that would account for the loss of the cattle.

Miller also argues that under the doctrine of res ipsa loquitur, the burden to prove that the loss of cows was not caused by the bailee's negligence, falls upon the bailee, citing *Wood v. Gable,* 656 S.W.2d 623 (Tex.App. 2nd Dist.1983).

Res ipsa loquitur requires certain facts to be proven; "(1) the accident was one which does not ordinarily occur in the absence of negligence; (2) the instrumentality which caused the plaintiff's injury was in the exclusive control of the defendant; and (3) there was no voluntary action or contribution on the part of the plaintiff." *Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155, 159 (N.D.1985). None of the three requirements of res ipsa loquitur is met by the facts in this case. Therefore, the doctrine of res ipsa loquitur does not apply.

We hold that the finding of no negligence on the part of Tweeten was properly supported by the evidence. The district court heard testimony from Tweeten regarding his management practices and the care of the cattle. The court also heard testimony from Alden Miller, a cattleman and neighbor to Tweeten, who had several opportunities to observe the cattle on different occasions. Alden testified that from his experience and observations Tweeten's practices were sufficient. Alden also testified that out of the herd that Tweeten had received from Miller, only about 25 were in good shape, while another 20 seemed to be very old cattle. Alden also testified that he and Tweeten had purchased a hay grinder in order to better feed the older cows that were among the herd.

Findings of the trial court are presumptively correct. *Gabel v. Gabel,* 434 N.W.2d 722 (N.D.1989) (citations omitted). This court will not reverse a finding of fact unless that finding is clearly erroneous. Rule 52 N.D.R.Civ.P. Had this court been the trier of fact, we may have viewed these facts differently. However, we cannot reverse for that reason alone. *Russell Land Co. v. Mandan Chrysler–Plymouth,* 377 N.W.2d 549, 552 (N.D.1985). "A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Byron v. Ger-*

*ring Industries, Inc.,* 328 N.W.2d 819, 821 (N.D.1982) (citations omitted). This court is not so convinced in this case.

Miller's second argument alleges that the trial court erred when it placed a duty upon Miller to monitor the cattle. The lower court's opinion stated:

"Although the facts in and of themselves normally indicate a death loss less than that experienced by Mr. Tweeten, there are no facts presented which justify the conclusion that he was negligent in the care and treatment of the cattle and calves. Mr. Miller was out there on several occasions and never saw fit to discuss anything with Mr. Tweeten except an indication of more food on the first occasion. No statements were made in June, nor in August or September when the loading took place. In this Court's opinion, if the cattle had been taken care of improperly, further action was necessitated on Mr. Miller's part. He should have insisted that the deaths be explained in a greater fashion if he felt they were the result of negligence. He likewise should have insisted on more information concerning the loss of the calves or at least have gone to the farm to observe the situation. If he felt there were a problem he should have been monitoring on a regular basis."

Miller counterclaims for damages which he alleges are due to Tweeten's failure to maintain the cattle properly. Miller claims that Tweeten breached the agreement by not providing the proper care for the cattle. Ordinarily, if there is a breach of a lease agreement, there is a duty on the nonbreaching party to minimize the damages. *Wallwork Lease & Rental v. JNJ Investments,* 303 N.W.2d 545, 547 (N.D.1981). If in fact Miller believed that Tweeten was not fulfilling the contract, he should have taken steps to minimize any damages. However, Miller did not take any steps to remove the cattle, or even complain to Tweeten about the care of the cattle.

Under the contract which was drafted by Miller, he reserved the right to inspect the cattle. After Miller inspected the cattle he did not complain or object to the treatment they were receiving. Therefore, the trial court was justified in considering Miller's failure to complain about the treatment and failure to monitor the cattle on a regular basis.

As set forth above, there was sufficient evidence to support the finding that Tweeten's care of the cattle was adequate and the court was justified in considering Miller's actions in arriving at that finding. Therefore, we affirm the judgment of the district court.

VANDE WALLE, Acting C.J., MESCHKE and LEVINE, JJ., and DOUGLAS B. HEEN, Surrogate Justice, concur.

DOUGLAS B. HEEN, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.