Robert R. TAGHON and Donny Taghon,
Plaintiffs and Appellants,

v.

Arnold KUHN and Mitch Kuhn,
Defendants and Appellees.

Civ. No. 920185.

Supreme Court of North Dakota.

March 11, 1993.

Ray H. Walton, P.C. (argued), Kirkwood Office Towers, Bismarck, for plaintiffs and appellants.

Vogel Law Firm, Mandan, for defendants and appellees; argued by Jos. A. Vogel, Jr.

MESCHKE, Justice.

Robert Taghon and his son, Donny Taghon, appeal a judgment that dismissed their bailment claim against Arnold and Mitch Kuhn for missing cattle pastured on the Kuhn corn stubble. The Taghons also appeal an order overruling their objection to an expert witness fee allowed the Kuhns. We affirm.

The Taghons and the Kuhns operate nearby ranches west of Mandan. In the fall of 1990, they orally agreed that the Taghons would graze their cattle on 300 acres of irrigated corn stubble at the Kuhn place, and would pay the Kuhns 55 cents a head per day. They agreed that the Taghons could remove their cattle at any time and that the Taghons remained responsible for attending to any sick animals. The Kuhns agreed to maintain the fences enclosing the pasture and to keep the main gate to the pasture locked. The Taghons were offered a key to the main gate, but declined. The Taghons, however, could check on their cattle by getting a key from the Kuhns. The Taghons also agreed to share the costs of salt and minerals with the other ranchers who would be grazing cattle in the pasture on similar terms.

On October 21, 1990, the Taghons put 87 head of angus cattle into the Kuhns' pasture. During the late fall, 167 intermixed cattle grazed the stubble with only a few minor incidents. On one occasion, some of the cattle strayed from the pasture when they crossed the bordering Heart River and entered a neighbor's pasture. The Kuhns retrieved the cattle and erected an electric fence to ensure that the animals would not stray beyond the river again. On another occasion, the cattle strayed from the pasture when an electric fence was knocked down. The Kuhns retrieved the cattle and repaired the fence.

On December 17, 1990, a heavy snow storm covered the corn stubble. The Taghons then asked the Kuhns to deliver hay to their cattle, until the cattle could be transported back home. On December 27, the Taghons retrieved their cattle and discovered that 16 head were missing. An extensive search for the missing cattle ensued, but none was found.

Eleven months later, three cows turned up eight miles southwest of the Taghon ranch, and four cows were located 25–30 miles from the Taghon ranch. These cows were in fair to poor condition, all were pregnant, and their identification tags were missing. Rub marks near the cows' hip bones lead the Taghons to believe that the cattle had been stolen but moved recently by trailer.

The Taghons sued the Kuhns, alleging that a bailment for hire existed, and that the Kuhns, as bailees, were liable for the lost cattle. Alternatively, the Taghons alleged that, even if a bailment did not exist, the Kuhns were negligent in caring for the cattle, and that their negligence caused the loss.

After a trial without a jury, the trial court ruled that the arrangement was a pasture tenancy, rather than a bailment. The court reasoned that the agreement was not a bailment since the Taghons never relinquished possession, control, and dominion over their cattle. The court also found no evidence of negligence by the Kuhns.

The trial court awarded the Kuhns $3,263.25 in costs and disbursements, including $2,462.00 for the expert witness fees of Mike Berg, an auctioneer and rancher who raises registered angus and

charolais cattle, operates a 1,000 head feed-lot, and conducts 20 to 30 auction sales of angus cattle each year. Berg studied the registration papers and production records of the Taghons' cattle, and testified for the Kuhns about the value of the missing cattle.

The Taghons objected to the Kuhns' statement of costs and disbursements, alleging that Berg was not an expert witness, that his fees were not detailed and verified as NDRCivP 54(e) requires, and that, therefore, the trial court abused its discretion in allowing them as costs. The Kuhns' attorney filed an affidavit that Berg was retained and used as an expert witness, and attached copies of Berg's itemization of costs, time, and work. At a hearing, the Taghons conceded that Berg was an expert, but requested more time to challenge the reasonableness of his fees. After the hearing, the Kuhns' attorney filed another affidavit describing the documents given to Berg for preparation. The Taghons objected further that, because the affidavits of the Kuhns' attorney were not based on personal knowledge and contained hearsay, they were insufficient verification. The court overruled the Taghons' objection and confirmed the award of the expert fees to the Kuhns.

On appeal, the Taghons argue that the trial court's finding that a bailment did not exist is erroneous as a matter of law. The Taghons also contend that the trial court abused its discretion in awarding the expert fees to the Kuhns.

In determining that this agreement created a landlord-tenant relationship, not a bailment, the trial court, quoting *F–M Potatoes, Inc. v. Suda*, 259 N.W.2d 487, 490 (N.D.1977) (quoting *Great Plains Supply Co. v. Mobil Oil Co.*, 172 N.W.2d 241, 245 (N.D.1969)), reasoned:

> [T]he test is whether the person leaving the property has made such a delivery to the owner of the premises as to amount to a relinquishment, for a time, of his exclusive possession, control, and dominion over the property, so that the latter can exclude, within the limits of the agreement, the possession of all others.

If he has, the general rule is that the transaction is a bailment. If there is no such delivery and relinquishment of exclusive possession, and control and dominion over the goods is dependent in no degree upon the cooperation of the owner of the premises, and access to the goods is in nowise subject to the latter's control, it is generally held that the owner of the goods is a tenant or lessee of the space upon the premises where they are left.

The trial court ruled that the Kuhns did not have the degree of control over the cattle necessary for a bailment. The trial court found that the Taghons had unrestricted access to the pasture, could remove their cattle at any time, remained responsible for any sick animals, and had to request the Kuhns to feed their cattle when the snowstorm made grazing impossible. Additionally, the court found that, under the custom and usage of like agreements in that vicinity, the risk of loss remained with the Taghons. Consequently, the court determined that the oral agreement was for the rental of pasture land, rather than a bailment for the care of cattle.

■ An agreement to pasture, feed, and care for cattle is a bailment if the bailee has the custody and control of the cattle. *Bowers v. Western Livestock Company*, 103 N.W.2d 109 (N.D.1960); *Gunderson v. Johnson*, 132 N.W.2d 700 (N.D. 1965). *See also Lee v. Johnson*, 154 N.W.2d 382 (N.D.1967) (injury to a horse being towed in a horse trailer). When a bailee for hire fails to return goods, there is a presumption that the bailee was negligent. *McKenzie v. Hanson*, 143 N.W.2d 697 (N.D.1966); *Great Plains Supply Co. v. Mobil Oil Co.*, 172 N.W.2d 241 (N.D. 1969). *Compare Tweeten v. Miller*, 477 N.W.2d 822 (N.D.1991) (lessee not negligent in caring for cows). A bailment depends on the degree of control and possession.

The Taghons contend that the Kuhns exercised sufficient control over the cattle to create a bailment as a matter of law. They principally cite *Puritan Ins. Co. v. Butler Aviation–Palm Beach, Inc.*, 715 F.2d 502

(11th Cir.1983). In *Puritan,* a plane owner sued Butler Aviation, alleging a bailment when the owner's plane was stolen from the company's premises. The company provided parking and services for aircraft owners including a fenced storage area, nightly security checks, aircraft registration procedures, dispatchers, and the placement and tying down of aircraft. The company also controlled access to the facility. The company argued that it lacked sufficient control over the aircraft to constitute a bailment, since the owner retained the keys to the aircraft's doors and could use the plane at any time. The Ninth Circuit Court of Appeals upheld the trial court's ruling that a bailment existed, reasoning that the extensive security measures gave the company control of the aircraft. The court stated that, while the owner retained his keys, practical control remained with Butler. *Id.* at 504. The Taghons argue that the Kuhns had practical control of the cattle, making the arrangement a bailment as a matter of law.

■ We are not persuaded by the Taghons' analogy. Generally, "to constitute a bailment, there must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give the bailee the sole custody and control of the goods." *Great Plains Supply Co. v. Mobil Oil Co.,* 172 N.W.2d at 245. In contrast to the possession and control by the company in *Puritan,* the Kuhns only maintained the fence around the pasture and locked the main gate. We cannot say that this limited control created a bailment as a matter of law.

The Taghons' argument also ignores the trial court's finding that the Kuhns did not assume the risk of loss under the custom and usage of such agreements in that vicinity. "Where customs or usages on a subject are prevalent, they are impliedly incorporated into agreements to measure the rights of the parties." *Tong v. Borstad,*

231 N.W.2d 795, 800 (N.D.1975). Implicit in the Taghons' retained risk of loss was a degree of control and dominion over their own cattle that precludes the existence of a bailment.

The Taghons also argue, for the first time on appeal, that a bailment as a matter of law existed because the Kuhns could have asserted an agister's lien and retained possession of the Taghons' cattle. *See* NDCC 35–17–01.[1] The Taghons contend that, under this statute, the Kuhns had an absolute right to exclusive possession of the cattle until charges for feeding, herding, and pasturing were paid. Citing *LePire v. Workmen's Compensation Bureau,* 111 N.W.2d 355 (N.D.1961), the Taghons argue that the failure to raise this statute at trial is not fatal. We disagree.

■ Ordinarily, questions not raised at trial will not be considered on appeal. *City of West Fargo v. Maring,* 458 N.W.2d 318 (N.D.1990). Still, this court has held that, "where a pertinent statute has been overlooked by both counsel and the court, resulting in plain error in a matter that is of public concern, this court will consider the error even though it is not brought to our attention by either of the parties." *LePire,* 111 N.W.2d at 359. Here, we see no plain error that compels application of the agister's lien statute. The terms of the oral contract, which allowed the Taghons to remove their cattle at any time, make the statute peripheral. The question whether the possession of the cattle was entrusted to the Kuhns within the meaning of the statute is a factual one, not a matter of law. That question is for the trier of fact to determine from the evidence presented at trial, not for an appellate court to decide from a cold record.

■ The Taghons' final argument is that the trial court abused its discretion in the amount of expert witness fees awarded to the Kuhns. The Taghons contend that

---

**1.** NDCC 35–17–01 says:

*Agister's lien authorized.* Any person to whom any animal is entrusted by the owner thereof for the purpose of feeding, herding, pasturing, or ranching has a lien upon the animals for the amount that may be due for feeding, herding, pasturing, or ranching, and is authorized to retain possession of the animal until the amount is paid. This section does not apply to stolen stock.

the fees were not detailed and verified as required by NDRCivP 54(e)[2] because the Kuhn's attorney filed an affidavit of costs and disbursements, rather than an affidavit of Berg, the expert who testified at the trial. We are unpersuaded. As the prevailing party, the Kuhns are entitled to expect expert witness fees. NDCC 28-26-06(5). The amount of fees allowed is within the trial court's sole discretion and will not be disturbed on appeal, unless the facts show an abuse of discretion. *Munch v. City of Mott,* 311 N.W.2d 17, 23 (N.D.1981). The trial court received a detailed summary of Berg's itemization of costs and time records, though not verified by Berg, and had presided at the trial when Berg testified. Since the Taghons offered no evidence contradicting the reasonableness of Berg's fees, we conclude that the trial court did not abuse its discretion.

We affirm.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to NDCC 27-17-03.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.

2. The relevant part of NDRCivP 54(e) says:

   *(e) Costs.* Costs and disbursements must be allowed as provided by statute. A party awarded costs and disbursements shall submit to the clerk a detailed, verified statement thereof. Upon receipt of the statement, the clerk shall allow those costs and disbursements and insert them in the judgment. A copy of the statement must accompany the notice of entry of judgment. Objections must be served and filed with the clerk, either within seven days after notice of entry of judgment or within such longer time the court may fix any order made within the seven days. Objections must specify the ground thereof.