2013 ND 156

Janet L. BRASH, individually and as Personal Representative of the Estate of Larry R. Brash, Deceased, Plaintiff and Appellant

v.

William M. GULLESON, a/k/a Wm. M. Gulleson, Defendant and Appellee.

No. 20120313.

Supreme Court of North Dakota.

Aug. 29, 2013.

Rehearing Denied Sept. 25, 2013.

Jonathan T. Garaas, DeMores Office Park, Fargo, N.D., for plaintiff and appellant.

Megan E. Kummer (argued) and John D. Bullis (appeared), Wahpeton, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Janet L. Brash, individually and as personal representative of the estate of Larry R. Brash, appealed from a judgment entered after a bench trial dismissing her action against William M. Gulleson. We conclude the district court did not err in concluding there was a failure of consideration in the performance of the Cow/Calf Production Lease Agreement between the Brashes and Gulleson. We affirm.

I

[¶ 2] Janet Brash lives in rural Sargent County and is the widow of Dr. Larry Brash, who died in 2004. William Gulleson is a farmer and rancher near Rutland in Sargent County, who operates his farm with his three sons. The Gullesons raise grain, maintain a cow/calf herd, and contract to run other people's cattle on their land. In the 1980s, Dr. Larry Brash, a veterinarian, opened a practice in the Rutland area and lived on a small farm near Gulleson's ranch. Dr. Brash and Gulleson developed a close personal and business relationship, and Dr. Brash provided all of the veterinarian service to Gulleson's ranch.

[¶ 3] In the mid–1980s, Dr. Brash also began running cows on Gulleson's ranch under an oral agreement to operate on a "60/40 share basis." Gulleson provided care and feed and received 60 percent of the calf crop from Dr. Brash's cows, and Dr. Brash provided veterinarian services. In the fall of 1997, Dr. Brash supervised an inventory and evaluation of cows on the Gulleson ranch, which included cows owned by Gulleson, Dr. Brash, and two or three others who had agreements with Gulleson. At that time, Dr. Brash had 108 cows on the Gulleson ranch.

[¶ 4] In 2000, Dr. Brash and Gulleson executed a written Cow/Calf Production Lease Agreement ("the Agreement"), designating Dr. Brash and Janet Brash as "owner" of the cows and Gulleson as "renter." Under the terms of the Agreement, the Brashes agreed to furnish 130 cows presently situated on the Gulleson farm to be cared for by Gulleson, and Gulleson would in return give the Brashes 40 percent of the calf crop each year. Specifically, under section one, "General Terms," the Agreement states:

A. In exchange for the mutual promises and covenants contained in this agreement, Owner will furnish[ ] One Hundred Thirty (130) cows which are presently situated on renter's farm in Sargent County, North Dakota to Renter and Renter will lease the cows from Owner under the terms and conditions set forth in this agreement.

Under section three, "Share of Cattle," the Agreement states in part: "In return for the use of the cows, Renter will give Owner the following: Forty percent (40%) of the annual calf production from the entire 130 cow herd." Additionally, under section seven, "Barren Cows," the Agreement states:

It is the intention of Owner and Renter to *maintain the number of cows leased to Renter at One Hundred Thirty (130) head, or as near to that number as is possible and mutually agreeable. Owner will provide replacements by natural addition from his share of the calf crop or by purchaseing [sic] replacements, at owner[']s option.*

(Emphasis added.)

After Dr. Brash's death in 2004, Janet Brash testified she became the sole owner of all 130 cows and their offspring; however, when she demanded the return of the estate's and her portion of the herd, Gulleson returned only seven cows.

[¶ 5]   In 2005, Janet Brash brought this action against Gulleson, alleging Gulleson failed to comply with the Agreement executed in 2000.   Brash alleged that Gulleson failed to account for the animals, asserting Gulleson failed to account for a potential 272 missing animals, and failed to deliver the animals or make payment for the reasonable value of the animals not returned as required by the contract and under state law.   Gulleson answered, acknowledging the parties' Agreement but asserting in part the Brashes had failed to deliver the 130 cows under the Agreement, instead delivering only a small fraction of that number, and that Gulleson had accounted for all cows delivered under the Agreement.   Among his defenses, Gulleson affirmatively stated the defense of failure of consideration in his answer to the complaint.

[¶ 6]   In April 2012, the district court held a bench trial.   After trial, the court entered its findings of fact, conclusions of law, and order for judgment, holding in part that Dr. Brash had failed to provide 130 cows as required under the contract, which constituted a failure of consideration, and that Janet Brash had failed to prove a breach of the agreement by Gulleson.   The court dismissed Brash's claims with prejudice.   Judgment was entered in June 2012.

## II

[¶ 7]   Our standard for reviewing an appeal after a bench trial is well-established:

In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. *Fargo Foods, Inc. v. Bernabucci*, 1999 ND 120, ¶ 10, 596 N.W.2d 38.   A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after re-

viewing all the evidence, we are left with a definite and firm conviction a mistake has been made.   *Moen v. Thomas*, 2001 ND 95, ¶ 19, 627 N.W.2d 146.   "In a bench trial, the trial court is 'the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.' " *Id.* at ¶ 20.

*Fladeland v. Gudbranson*, 2004 ND 118, ¶ 7, 681 N.W.2d 431.

## III

[¶ 8]   Generally, "[a]n agreement to pasture, feed, and care for cattle is a bailment if the bailee has the custody and control of the cattle." *Taghon v. Kuhn*, 497 N.W.2d 403, 405 (N.D.1993) (citing *Bowers v. Western Livestock Co.*, 103 N.W.2d 109 (N.D.1960); *Gunderson v. Johnson*, 132 N.W.2d 700 (N.D.1965)). "When a bailee for hire fails to return goods, there is a presumption that the bailee was negligent." *Taghon*, at 405 (citing *McKenzie v. Hanson*, 143 N.W.2d 697 (N.D.1966); *Great Plains Supply Co. v. Mobil Oil Co.*, 172 N.W.2d 241 (N.D.1969); and comparing *Tweeten v. Miller*, 477 N.W.2d 822 (N.D.1991) (lessee not negligent in caring for cows)).

[¶ 9]   A bailment depends on the degree of control and possession, and " 'to constitute a bailment, there must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give the bailee the sole custody and control of the goods.' " *Taghon*, 497 N.W.2d at 406 (quoting *Great Plains Supply*, at 245).   This Court has said that " '[w]here customs or usages on a subject are prevalent, they are impliedly incorporated into agreements to measure the rights of the parties.' " *Taghon*, at 406 (quoting *Tong v. Borstad*, 231 N.W.2d 795, 800 (N.D.1975)).   Additionally, under N.D.C.C. § 47–15–04, one who has tempo-

rary possession of another's personal property under a contract must exercise ordinary care. *Tweeten,* 477 N.W.2d at 824. Section 47–15–07, N.D.C.C., requires a hirer of personal property repair all deteriorations or injuries thereto occasioned by the hirer's ordinary or gross negligence. *Tweeten,* at 824.

[¶ 10] In *Taghon,* 497 N.W.2d at 406, this Court said that whether the possession of the cattle had been entrusted to the defendants within the relevant statute's meaning was a factual determination, rather than a matter of law, and as such was a question for the trier of fact to decide from the evidence presented at trial.

> Findings of the trial court are presumptively correct. *Gabel v. Gabel,* 434 N.W.2d 722 (N.D.1989) (citations omitted). This court will not reverse a finding of fact unless that finding is clearly erroneous. Rule 52 N.D.R.Civ.P. Had this court been the trier of fact, we may have viewed these facts differently. However, we cannot reverse for that reason alone. *Russell Land Co. v. Mandan Chrysler–Plymouth,* 377 N.W.2d 549, 552 (N.D.1985). "A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Byron v. Gerring Industries, Inc.,* 328 N.W.2d 819, 821 (N.D.1982) (citations omitted).

*Tweeten,* 477 N.W.2d at 824–25.

### IV

[¶ 11] On appeal, Brash raises a myriad of related issues. Brash argues that a bailee may not introduce parol evidence to alter the terms of a written contract; that a bailee may not seek reformation or revision of the contract terms without complying with N.D.C.C. ch. 32–04, which requires the existence of fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected; and that a bailee may not seek reformation or revision of the contract terms without proper pleading. Brash also argues that a bailee may not ignore a written contract's terms; that a bailor has a right to a money judgment under N.D.C.C. § 60–01–25 for the value of missing animals in absence of evidence otherwise; and that a bailor may rely on statutory presumptions of willful or gross negligence when a bailee does not return or account for entrusted personal property. Brash essentially contends that the trial court erred in finding a scrivener's error to reform or revise the Agreement; however, we do not believe the district court relied on scrivener's error in reaching its conclusions.

[¶ 12] We conclude, therefore, the dispositive issue on appeal is whether the district court erred in finding there was a failure of consideration in performance of the Cow/Calf Production Lease Agreement.

[¶ 13] Failure of consideration is an affirmative defense. *See* N.D.R.Civ.P. 8(c)(1). "Failure of consideration arises when a valid contract has been formed, but the performance bargained for has not been rendered." *Check Control, Inc. v. Shepherd,* 462 N.W.2d 644, 646 (N.D.1990). Failure of consideration, however, should be distinguished from lack of consideration, which prevents an enforceable contract from ever being formed. *Harrington v. Harrington,* 365 N.W.2d 552, 555 (N.D.1985). "A failure of consideration may be either partial or total." *Check Control,* at 647. "When there is a failure of consideration, a contract, valid when formed, becomes unenforceable because the performance bargained for has not been rendered." *First Nat'l Bank of Belfield v. Burich,* 367 N.W.2d 148, 152 n.

3 (N.D.1985). "While the successful assertion of the defense of failure or want of consideration has the same effect as rescinding the contract, in that the contract ceases to exist, no notice of rescission is required." 17A Am.Jur.2d *Contracts* § 648 (2004).

[¶ 14] Whether there has been a failure of consideration is a question of fact which will not be disturbed unless it is found to be clearly erroneous. *Check Control,* 462 N.W.2d at 647; *Burich,* 367 N.W.2d at 153. We therefore review the trial court's findings whether there has been a failure of consideration under the "clearly erroneous" standard of N.D.R.Civ.P. 52(a). *Check Control,* 462 N.W.2d at 647. In applying the "clearly erroneous" standard, we do not substitute our judgment for that of the trial court. *Check Control,* at 647. "It is not sufficient that we merely may have viewed the facts differently if we had been the trier of fact." *Id.* at 647. Rather, to hold the trial court's finding was clearly erroneous, we must determine the finding has no support in the evidence or, although some evidence exists to support the finding, we are left with a definite and firm conviction that a mistake has been made. *Id.* at 647–48.

[¶ 15] As discussed, the parties here executed a written "Cow/Calf Production Lease Agreement" which provides that the Brashes would furnish 130 cows presently situated on Gulleson's farm and would provide replacements to maintain the herd at that number. Generally, "[c]onstruction of a written contract to determine its legal effect presents a question of law, which is fully reviewable." *Bakken v. Duchscher,* 2013 ND 33, ¶ 13, 827 N.W.2d 17.

> [O]n appeal, we independently examine and construe the contract to determine if the trial court erred in its contract interpretation. A court's primary goal in interpreting a contract is to ascertain the mutual intentions of the contracting parties. 'Section 9–07–06, N.D.C.C., requires that a contract be interpreted as a whole.' Under NDCC 9–07–12, '[a] contract may be explained by reference to the circumstances under which it was made.' 'If the language of the contract is clear and unambiguous, and the intent is apparent from its face, there is no room for further interpretation.' Still, ... a contract is ambiguous when reasonable arguments can be made for different positions on its meaning.

*Bakken,* at ¶ 13 (citations omitted). Whether a contract is ambiguous presents a question of law. *Id.* "Extrinsic evidence may not be used to vary or contradict the terms of an unambiguous agreement or to create an ambiguity." *Id.*

[¶ 16] Regarding parol evidence, N.D.C.C. § 9–06–07 states: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." This Court has explained, however, that while "parol evidence is generally not admissible to vary or contradict the terms of a written contract," parol evidence is admissible to prove a failure of consideration. *Burich,* 367 N.W.2d 148 at 152. This Court has also said parol evidence may be admitted to prove that the actual consideration differed from that cited in a deed. *Johnson Farms v. McEnroe,* 1997 ND 179, ¶ 22, 568 N.W.2d 920. A trial court's decision to admit parol evidence is a determination of law, fully reviewable on appeal. *Burich,* at 152.

[¶ 17] After the bench trial, the district court concluded that there had been a failure of consideration:

> 2. The written Agreement was signed by the parties in 2000, and must be interpreted in light of the parties'

usage and course of dealing. It was intended to memorialize the business relationship between Dr. Brash and Gulleson, which continued on exactly the same terms as it had before the Agreement was signed, and to show that Janet Brash had priority ownership of the herd over Dr. Brash's children. Janet Brash, though a party to the written Agreement, had no role in its performance or the management of the herd, and had no personal knowledge of the herd's numbers or condition when the Agreement was entered into or thereafter.

3. The statement in the Agreement that Dr. Brash had 130 cows on the Gulleson Ranch in April 2000 is a recitation of fact, not a term or condition of the contract. Further, Dr. Brash's failure to provide 130 cows as required by the contract would constitute a failure of consideration. Therefore, extrinsic evidence of the actual number of cows in the Brash herd in April 2000 is not barred by the parol evidence rule.

4. The plaintiff failed to prove any breach of the Agreement by Gulleson. Dr. Brash's failure to maintain 130 cows on the Gulleson ranch was a technical breach of the Agreement, but Gulleson voluntarily waived his right to enforce that term. Gulleson's compliance with the Agreement is evidenced by the fact that there is no evidence of a single complaint by Dr. Brash about Gulleson's conduct in regard to the Brash herd or anything else.

[¶ 18] The trial court also concluded that Gulleson provided an accurate summary and accounting of the Brash herd maintained at his ranch. The court held Gulleson provided a sufficient explanation of the disposition of all animals owned by Dr. Brash on Gulleson's ranch in his testimony. The court found his testimony was supported by information contained in Dr. Brash's records, on which Gulleson relied because his own records had been destroyed in a fire in 2003.

[¶ 19] In reaching its conclusion, the trial court made a number of factual findings based on the evidence. The court found Dr. Brash was present at the Gulleson ranch on a weekly to monthly basis throughout the business relationship, providing veterinary services, monitoring his herd, or visiting Gulleson socially. From this testimony, the court found Dr. Brash had full knowledge of his herd's status, actively and continuously participating in its management until his death in 2004. The court found from Gulleson's testimony that he and Dr. Brash had a cooperative and amicable relationship and there is no evidence Dr. Brash was dissatisfied with Gulleson's performance of their Agreement. The court found that in the fall of 1997, Dr. Brash supervised a complete inventory and evaluation of cows on the Gulleson ranch, showing Dr. Brash had 108 cows on the ranch, ranging from 3 to 11 years old.

[¶ 20] The trial court found based on Gulleson's testimony that Dr. Brash never added to his cow herd after 1997, either by buying cows or retaining heifer calves, and that the normal life span of a brood cow is about 10 years. The trial court found Dr. Brash's herd of 108 cows diminished continuously, due to natural aging and disease, from 1997 until Dr. Brash's death in 2004.

[¶ 21] In explaining what the court considered a "mistaken recitation of fact" in the Agreement, the trial court found based on Gulleson's testimony that his ranch had a maximum capacity of 260 cows, and that he and Dr. Brash agreed Dr. Brash would have the right to increase his herd up to 130 cows, or half the ranch's grazing capacity. The court found, however, that they continued to operate their cow/calf lease arrangement exactly as before and

there was no evidence either party referred to the Agreement terms after it was signed, or insisted upon strict performance. The court found Dr. Brash continued to actively manage and determine the size of his herd, while Gulleson provided grazing land, care, feed, and advice on herd management. The court found Janet Brash had very limited knowledge of the herd and its management.

[¶ 22] Based on the testimony and evidence presented, the trial court found Dr. Brash had only seven brood cows left at the Gulleson ranch in 2004, as the rest of the herd had aged out or been debilitated or killed by disease. Further, the court found Dr. Brash had not replenished his herd after 1997. The court found the exhibits showed Dr. Brash sold several cows between 2000 and 2004, with a declining number of calves sold each year, and that cows were being culled or returned from the herd during that time. The court found the end result of this process was that only seven cows remained on the Gulleson ranch at the time of Dr. Brash's death in 2004.

[¶ 23] The trial court found that, although a 2003 barn fire had destroyed all records relating to Gulleson's cow/calf operations, Gulleson provided an accurate accounting for the Brash herd through his testimony and a summary created by him and his sons and admitted in evidence. The court found the summary accurately reflected the records of sales contained in records kept by Dr. Brash, and "comport[ed] with the testimony of Gulleson, his sons," and another witness. The court found their testimony regarding the Brash herd "to be substantially more credible than [Janet Brash's] evidence." The court gave no weight to her evidence showing "tables of cow/calf numbers and valuations" because Janet Brash lacked firsthand knowledge of the content and management of the herd on the Gulleson ranch.

[¶ 24] There is evidence in the record showing that Dr. Brash had not furnished the 130 cows nor did he maintain 130 cows during subsequent years, despite language to the contrary in the Agreement. William Gulleson testified:

Q. But the contract date says April 14, 2000, doesn't it?

A. Okay. It probably does.

Q. And on April 14, 2000, you were proposing to be the renter of Larry and Janet Brash's cows, correct?

A. The cows that were on the farm at the time.

Q. And where does it say that?

A. It doesn't. But that's what—that's the truth of the situation.

Q. Well, actually it does say that, doesn't it? Doesn't it say that renter will lease the cows from owner under the terms and conditions set forth in this agreement? And they are 130 cows which are presently situated on renter's farm in Sargent County, North Dakota? Paragraph A on page 1.

A. Larry never owned 130 cows.

THE COURT: Mr. Gulleson, I think the question is, that's what the contract says?

THE WITNESS: That's what the contract says.

. . . .

Q. (BY MR. GARAAS) From April of 2000 until September of 2000 did you and Larry have a discussion wherein you protested the lack of 130 cows?

A. There was no protest. We had a discussion about—

Q. Right. Mr. Gulleson, if there was no protest and you did not write anything in writing, on September 18th you signed a document acknowledging the existence of 130 cows that were to be maintained under the contract, right?

A. Larry—We were working—This was a, this was a goal to work to. Larry had the option to bring in whatever up to 130 cows. This was a goal. This wasn't—Larry and I didn't look at this as fact on that day. This was a goal that we were working towards.

Q. On April 14, 2000, did it not say that 130 cows are presently situated on your farm?

A. Yes.

Q. And did it not say that it was the intention of both of you that 130 cows would be maintained?

A. Yes.

Q. And were those cattle entrusted to your care with an obligation on your part to care for them and treat them as if they were your own?

A. The cows that were there, yes.

. . . .

Q. (BY MR. GARAAS) All right. If there were 108 cows in 1997, how many cows were there on April 18—April 14, 2000?

A. Seventy-six.

Q. And so the representation that you made that there were 130 cows on the farm, you're flat out saying is not true?

A. That was a goal to be achieved.

Q. Where does it—

A. It doesn't say that, sir. But that's the reality of it. That was the goal to be achieved. And I knew that, Larry knew that, Bill Anderson [the attorney who drafted the agreement] knew that, my boys knew that, everybody knew it. That was a goal to be achieved.

Thus, although it was undisputed at trial that Dr. Brash had 108 cows on the Gulleson ranch in 1997, Gulleson nonetheless testified that in fact Dr. Brash had only 76 cows on his farm in April 2000 and that only seven cows owned by the Brashes remained in 2004.

[¶ 25] On this record, we conclude that Gulleson properly raised an affirmative defense of failure of consideration and, further, that the district court did not err as a matter of law in allowing Gulleson to present parol evidence to prove a failure of consideration. Based on the foregoing, we conclude there is support in the evidence presented at trial for the finding, and we are not left with a definite and firm conviction that a mistake has been made. We therefore conclude the trial court's finding that there was a failure of consideration in the performance of the Agreement is not clearly erroneous.

V

[¶ 26] We have considered the remaining issues and arguments presented by the parties and deem them to be without merit or unnecessary to our decision. The judgment is affirmed.

[¶ 27] DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

DANIEL J. CROTHERS, J., concurs in the result.